MINNEAPOLIS STAR & TRIBUNE CO., Gannett Broadcasting, Inc., Joint Media Committee of Minnesota, Inc., Midwest Radio and Television, et al., Society of Professional Journalists, Respondents,

v.

The Honorable Robert H. SCHUMACHER, Judge of Hennepin County District Court, Bradley A. Wicks, Executor for the Estate of E. Allen Wicks, and Janenne M. Wicks, deceased, et al., Petitioners, Appellants,

Edward F. Stasik, Trustee for the Heirs and Next-of-Kin of Agnes R. Yakymi, f/k/a Agnes R. Stasik, decedent, Respondent,

Galaxy Airline, Inc., and Hy Thayer, petitioners, Appellants,

Desert Palace, Inc., et al., Defendants,

Catherine Aune, as Trustee for the Heirs and Next-of-Kin of Gordon G. Aune, decedent, Connie Granfors, as Trustee for the Heirs of Mary Granfors, Deceased; Connie Granfors, as Trustee for the Heirs of Jack Granfors, Deceased, Petitioner, Appellants.

No. C8–86–65.

Supreme Court of Minnesota.

Aug. 8, 1986.

Hubert H. Humphrey, III, Catharine F. Haukedahl, Sp. Asst. Atty. Gen., St. Paul, for Judge Schumacher.

Erik J. Magnuson, James L. Foreman, Mary Cade, Minneapolis, for Bradley Wicks.

Boyd H. Ratchye, Donald W. Niles, St. Paul, for Galaxy.

Robert Johnson, Scott Koch, St. Paul, for Catherine & Gordon Aune.

Randall, Parmater, & Nereauv, Wayzata, for Mary & Connie Granfors.

Patricia A. Hirl, Minneapolis, for Mpls. Star & Trib.

Leslie J. Anderson, Minneapolis, for Gannett Broadcasting.

Paul R. Hannah, St. Paul, for Northwest Publications.

Mark R. Anfinson, Minneapolis, for MN Newspaper Assn.

AMDAHL, Chief Justice.

The narrow question presented by this case is what legal standard applies when a party seeks to restrict access to settlement documents and transcripts that are made part of a civil court file by statute.

## I.

In September and October of 1985, Judge Robert H. Schumacher of the Hennepin County District Court issued four orders directing that five civil court files be sealed. The files involved wrongful death suits that had been brought against Galaxy Airlines, Inc., and several others, after the crash of a Galaxy Airlines passenger airplane at Reno, Nevada, on January 21, 1985. The files were sealed at the request of the litigants after stipulated settlements were reached in each of the five cases. Judge Schumacher issued the orders after holding separate hearings in open court to determine how to distribute the settlement monies among the heirs of the deceased crash victims in each case.[1] The public and the media, however, were never informed of these hearings and consequently no one but the litigants attended.

The litigants requested that the files be sealed in order to protect the families of the deceased crash victims from public intrusion into their private lives and also to protect against influencing settlements of other suits against Galaxy involving the same air crash. The families believed that allowing the public access to these amounts could result in thefts, exploitation, trespass, and physical injury to them.

On November 21, 1985, Daniel Oberdorfer, a reporter for the Minneapolis Star & Tribune Company (Star & Tribune), orally requested access to the files in question. The clerk of court denied his request based on the orders issued by Judge Schumacher.[2] On December 4, the Star & Tribune brought a motion before Judge Schumacher requesting permission to intervene in the five cases and asking that Judge Schumacher reconsider and quash his orders sealing the files. The Star & Tribune sought access to the files based on its common law, statutory, and constitutional rights to "inspect, copy, or otherwise have access to such official and/or public records."

---

1. Judge Schumacher was required, under Minn. Stat. § 573.02 (1984) and Rule 2 of the Code of Rules for the District Courts of Minnesota, to approve the distribution of the settlement funds among the various heirs in each of the cases. Also, because one of the suits involved a minor child, Judge Schumacher was required to approve the settlement figure stipulated to by the parties. *See* Minn.Stat. § 540.08 (1984). This approval is what brought the settlement documents, not normally part of the trial court record, into the court files. However, contrary to the assertions of counsel for the Star & Tribune, the trial court had no jurisdiction in those cases brought under section 573.02 and Rule 2 to approve, or disapprove, of the settlement amounts agreed to by the parties. The court could only approve the *distribution* of those funds among the various heirs. *See Bond v. Roos*, 358 N.W.2d 654 (1984).

2. After his oral request on November 21, Oberdorfer made a written request for access on December 19, 1985. This second request was made in order to comply with the Supreme Court Interim Rules on Access to Public Records.

On December 23, 1985, a hearing was held on the Star & Tribune's motions. On January 3, 1986, Judge Schumacher issued an order granting the Star & Tribune's motion to intervene, but denying its motion to quash the original orders. Applying a common law balancing standard, Judge Schumacher reasoned that the privacy interests of the litigants in these cases outweighed the public interest of the Star & Tribune in access to the files. Judge Schumacher recognized "a general right to inspect and copy public records," but noted that this right was not absolute. Access could be denied in certain cases and the decision to permit access "is left to the sound discretion of the trial court—a discretion to be exercised in light of the relevant facts and circumstances of the particular case." Judge Schumacher acknowledged "the strong interest of the press in disseminating information," but held that this was outweighed by the privacy interests of the litigants, the effect disclosure would have on future settlements, and the fact that settling these cases would benefit the court and county by reducing the costs of litigation.

On January 8, 1986, the Star & Tribune, along with five other media representatives, filed a petition for a writ of prohibition with the Court of Appeals, seeking to have Judge Schumacher's orders vacated. They maintained that Judge Schumacher erred in applying a common law standard and asserted that a constitutional standard based on the first amendment freedoms of speech and press was the proper standard to apply in this case. The litigants, however, argued for the common law balancing approach, contending that access to the documents and transcripts in question does not give rise to the need for a constitutional standard. Under this approach, they argued, Judge Schumacher's orders must be affirmed.

On March 11, 1986, the Court of Appeals granted the writ of prohibition and vacated Judge Schumacher's orders by a 2–1 vote. *See Minneapolis Star & Tribune Co. v. Schumacher*, 383 N.W.2d 323 (Minn.App. 1986). The majority adopted a constitutional standard for questions of access to civil files. It stated that a general presumption of openness existed in favor of access to all court files and records, and that a specific presumption in favor of access existed in this case because wrongful death settlements required court approval of the distribution of funds. The majority then reasoned that because the settlement documents had been discussed in "open court" the terms of the settlements had been made public, even though no one but the parties had attended the hearings. "Once information is made public," the majority stated, "its dissemination may not constitutionally be restrained." 383 N.W.2d at 327. Under this prior restraint analysis, the majority held that the interests raised by Judge Schumacher for denying access were speculative and insufficient to justify restricting access.

The dissent, however, asserted that the majority was applying a constitutional standard to this case when no such standard had ever been established by this court or the United States Supreme Court. It argued that only a common law right of access could be considered where civil action files are involved. Under this common law right, the interests outlined by Judge Schumacher outweighed those raised by the Star & Tribune. It therefore argued that Judge Schumacher's orders should be upheld.

By an order dated March 10, 1986, we stayed the Court of Appeals decision pending the outcome of an appeal to this court. On March 27, 1986, we granted the petitions for further review of Judge Schumacher and several of the original litigants.[3] We now reverse the Court of Ap-

---

**3.** On April 25, 1986, after we had stayed the Court of Appeals decision and accepted this case for further review, Judge Schumacher amended his original orders sealing the files. The original orders, which included the entire file in each of the five cases, were amended to include only the "settlement and distribution papers" of each file and the transcripts of the settlement hearings. The rest of the files were opened to the public. Judge Schumacher, however, was

peals decision, vacate the writ of prohibition, and reinstate Judge Schumacher's amended orders.

## II.

The parties disagree over the proper legal standard to be applied in this case. Appellants maintain that Judge Schumacher properly applied a common law balancing test and that, under our limited scope of review, his decision must be upheld. Respondents, on the other hand, argue that the prevailing case law from other jurisdictions establishes a constitutional standard based on the first amendment. We have never considered this issue and must therefore examine how other jurisdictions have sought to resolve it.

### A. The Common Law Right of Access

It is undisputed that a common law right to inspect and copy civil court records exists. *See, e.g., Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 1311, 55 L.Ed.2d 570 (1977) ("It is clear that the courts of this country recognize a general right to inspect and copy * * judicial records and documents"); *Newman v. Graddick*, 696 F.2d 796 (11th Cir.1983); *Joy v. North*, 692 F.2d 880 (2d Cir.1982), *cert. denied*, 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983); *Zenith Radio Corp. v. Matsushita*, 529 F.Supp. 866, 875 (E.D. Pa.1981); *In re Estate of Hearst*, 67 Cal. App.3d 777, 136 Cal.Rptr. 821 (1977); *State ex rel. Bilder v. Township of Delavan*, 112 Wis.2d 539, 334 N.W.2d 252 (1983); *see also* Annot., 84 A.L.R.3d 598 (1978) (discussion of the common law right of access in the United States). The right to inspect and copy records is considered "fundamental to a democratic state," *United States v. Mitchell*, 551 F.2d 1252, 1258 (D.C.Cir. 1976), *rev'd on other grounds sub nom. Nixon*, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570; and is based on the principle

that "what transpires in the courtroom is public property." *Craig v. Harney*, 331 U.S. 367, 374, 67 S.Ct. 1249, 1254, 91 L.Ed.2d 1546 (1947). The right of inspection "serves to produce 'an informed and enlightened public opinion.'" *Mitchell*, 551 F.2d at 1258 (quoting *Grosjean v. American Press Co.*, 297 U.S. 233, 247, 56 S.Ct. 444, 448, 80 L.Ed. 660 (1936)). The right is well recognized in the United States. *See id.* n. 21, 56 S.Ct. at n. 21; Note, *The Common Law Right to Inspect and Copy Judicial Records: In Camera or On Camera*, 16 Ga.L.Rev. 659, 666–72 (1982).

Under the common law right, a presumption in favor of access arises. *See In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 474 (6th Cir.1983); *Joy*, 692 F.2d at 893. Many courts have characterized it as a strong presumption in favor of access. *See, e.g., Mitchell*, 551 F.2d at 1258–61; *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 101 F.R.D. 34, 43 (C.D.Ca.1984).

A party seeking to restrict access under the common law must assert a sufficiently strong interest in support of denying access in order to overcome the presumption. Although no one standard is universally accepted, courts have required parties seeking to restrict access to assert either "strong countervailing reasons," *Hearst*, 67 Cal.App.3d at 784, 136 Cal.Rptr. at 825; or "most compelling reasons," *Joy*, 692 F.2d at 893, before access can be restricted.

The common law right of access, however, is not absolute. *Nixon*, 435 U.S. at 598, 98 S.Ct. at 1312. "Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Id.* A balancing test is applied to determine whose interests should prevail. Those interests supporting

---

without jurisdiction to amend his original orders since at the time of the amendments, the case was before us on appeal. Because of the uniqueness of this case, however, we accept Judge Schumacher's amended orders as being a proper exercise of his jurisdiction. We there-

fore consider his original orders to have been properly amended and recognize that the sealed records now include only the settlement and distribution documents and transcript of the settlement hearing in each case. Our decision is made in the context of these amended orders.

access, including the presumption in favor of access, are balanced against the interests asserted for denying access. *See Newman,* 696 F.2d at 803; *Hearst,* 67 Cal. App.3d at 784,. 136 Cal.Rptr. at 825; *Bilder,* 112 Wis.2d at 551, 334 N.W.2d at 259. Only if the interests asserted in favor of denying access are strong enough to overcome the presumption may access be denied. *See, e.g., Hearst,* 67 Cal.App.3d at 777, 136 Cal.Rptr. 821 (interests in protecting privacy and safety of heirs were sufficient to overcome strong presumption in favor of access).

## B. First Amendment Right of Access

Several jurisdictions have established a constitutional right of access to civil court files and records. *See, e.g., Wilson v. American Motors Corp.,* 759 F.2d 1568 (11th Cir.1985); *In re Continental Illinois Securities Litigation,* 732 F.2d 1302 (7th Cir.1984); *Brown & Williamson Tobacco Corp. v. FTC,* 710 F.2d 1165 (6th Cir.1983). These jurisdictions recognize that the common law right of access is of constitutional magnitude, based on the first amendment.

As under the common law standard, a presumption in favor of access exists under the first amendment. *See Continental Illinois Securities Litigation,* 732 F.2d at 1308; *Brown & Williamson Tobacco Corp.,* 710 F.2d at 1179. This presumption has been characterized as "strong." *Brown & Williamson Tobacco Corp.,* 710 F.2d at 1179. The presumption, along with any other interests asserted in favor of access, are balanced against those interests asserted for denying access. *Continental Illinois Securities Litigation,* 732 F.2d at 1313–14. In order to overcome the presumption in favor of access, a party must demonstrate that a compelling governmental interest exists and that the restriction on access is narrowly tailored to meet this governmental interest. *See Wilson,* 759 F.2d at 1571; *Brown & Williamson Tobacco Corp.,* 710 F.2d at 1179. Only then may access be restricted.

## C. Choosing The Proper Standard

Use of the common law balancing standard to resolve questions of access to civil court files is well established in the United States. As noted above, however, only a few courts have elevated such access to a constitutional standard. In addition, the United States Supreme Court has not specifically considered what standard should apply to questions of access to civil court files or, more specifically for this case, to settlement documents and transcripts within those files. The Court has, however, analyzed whether a question of access to court proceedings or records should be made under a common law or constitutional standard. *See, e.g., Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) (access to trial proceedings in a criminal case); *Gannett Co. v. De Pasquale,* 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979) (access to pretrial proceedings in a criminal case); *see also Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984) (similar analysis used to decide questions of access to pretrial discovery materials in civil actions). We turn to the Court's analysis in these cases to determine the appropriate legal standard for access to the settlement documents and transcripts in this case.

Before turning to this analysis, however, we wish to emphasize the narrowness of the question presented to us and the narrowness of our decision. We are specifically considering only what standard should apply when a party seeks to restrict access to settlement documents or transcripts made part of a civil court file by statute. We do not intend this decision to apply to other civil trial records or documents.

The United States Supreme Court has applied a two-part analysis when considering whether the standard for access to a particular aspect of trial or a particular court document must be based upon common law or constitutional grounds. *See Richmond Newspapers,* 448 U.S. at 564–80, 100 S.Ct. at 2820–29; *Gannett Co.,* 443 U.S. at 378–93, 99 S.Ct. at 2904–12. The

Court first examines the proceeding or document to determine whether it has historically and philosophically been presumed open to the public. *See, e.g., Richmond Newspapers,* 448 U.S. at 564–75, 100 S.Ct. at 2820–26. If a historical and philosophical analysis leads to a "presumption of openness," *id.* at 573, 100 S.Ct. at 2825, the Court then examines the constitutional right asserted to determine whether it "affords protection" to the proceeding or document in question. *Id.* at 575–81, 100 S.Ct. at 2826–29.

The *Richmond Newspapers* and *Gannett Co.* decisions provide a helpful contrast for the present case. In *Gannett Co.,* the Court considered whether access to pretrial proceedings in a criminal case falls within the purview of the sixth and fourteenth amendments. The Court found that historically the public had little or no right to attend pretrial criminal proceedings. 443 U.S. at 389–91, 99 S.Ct. at 2910–11. The Court also found a philosophical objection to public access to pretrial proceedings in the "strong societal interest in [the] constitutional guarantees extended to the accused * * *." *Id.* at 383–84, 99 S.Ct. at 2907. This strong societal interest in an accused's constitutional guarantees meant that "[r]ecognition of an independent public interest in the enforcement of Sixth Amendment guarantees [to a public trial was] a far cry * * * from the creation of a constitutional right on the part of the public." *Id.* at 383, 99 S.Ct. at 2907. The lack of a presumption of openness to pretrial proceedings from both a historical and philosophical perspective meant "that members of the public have no constitutional right under the Sixth and Fourteenth Amendments to attend criminal trials." *Id.* at 391, 99 S.Ct. at 2911.

By contrast, in *Richmond Newspapers* the Court found a first amendment right of access to trial proceedings in criminal cases. The Court examined at length the history of criminal trials and stated that "the historical evidence demonstrates conclusively that * * * criminal trials both here and in England had long been presumptively open." 448 U.S. at 569, 100

S.Ct. at 2823. Philosophically, the Court stated that "the open processes of justice serve an important prophylactic purpose, providing an outlet for community concern, hostility, and emotion." *Id.* at 571, 100 S.Ct. at 2824. "The crucial prophylactic aspects of the administration of justice [could not] function in the dark; no community catharsis [could] occur if justice is 'done in a corner [or] in any covert manner.'" *Id.* The fact that criminal trials have historically and philosophically been presumed open to the public was strong evidence that the first amendment protected this right of access. "The right of access to places traditionally open to the public, as criminal trials have long been, may be seen as assured by the amalgam of the First Amendment guarantees of speech and press * * *." *Id.* at 577, 100 S.Ct. at 2827. This was true even though the first amendment did not specifically guarantee to the public the right to attend criminal trials. *Id.* at 579–80, 100 S.Ct. at 2828–29.

■ Applying this same analysis to the case at hand, we conclude that no first amendment right of access exists in the settlement documents and transcripts sealed by the court. Historically, the majority of settlements entered into between parties have been private. The parties agree to settle in private, outside of the courtroom and without the participation of the court. The court is only involved by accepting a stipulated agreement in which the parties inform the court that there has been a settlement and ask that the case be dismissed. The court, however, does not approve, or even inquire into, the terms of the settlement. The historic privacy of settlement agreements is borne out by the fact that settlements, offers to settle, and statements made during settlement negotiations are all inadmissible under the Rules of Evidence to prove liability. *See* Minn.R. Evid. 408; *Esser v. Brophey,* 212 Minn. 194, 3 N.W.2d 3 (1942); 11 P. Thompson, Minnesota Practice: Evidence § 408.01 (1979 & Supp.1986). Such a history of privacy does not justify a "presumption of

openness" for settlement documents such as those filed in this case.

■ The fact that the settlements here today were required by statute to be brought before the court does not destroy the historical fact that settlements have been private agreements not subject to public scrutiny. Although Minn.Stat. § 573.02 and Rule 2 of the Code of Rules for the District Courts require a court to approve the distribution of wrongful death settlement funds, the court does not participate in the settlement negotiations or approve the settlement terms. The intent of section 573.02 and Rule 2 in requiring court participation is not to bring wrongful death settlements within the public eye, but rather to facilitate the effective and proper distribution of the settlement funds. Similarly, the intent of Minn.Stat. § 540.08 in requiring court approval of settlements involving minors is to *protect minors,* not to expose these settlements to the public. These statutes, therefore, do not affect the historical fact that settlements have been private.

The philosophical reasoning behind allowing private settlements also leads to the conclusion that such agreements should remain private. This court has often stated that it favors the settlement of disputed claims without litigation. *See, e.g., Johnson v. St. Paul Insurance Co.,* 305 N.W.2d 571, 573 (Minn.1981); *Hentschel v. Smith,* 278 Minn. 86, 153 N.W.2d 199 (1967) ("This court has always supported a strong public policy favoring the settlement of disputed claims without litigation"); *see also Esser,* 212 Minn. 194, 3 N.W.2d 3. To allow public access to settlement documents filed with a court may circumvent this policy. One of the reasons parties agree to settle is that they do not wish to go to trial and expose their disputes to the public. This fact was raised by the appellants in this case. It would therefore be inconsistent with our public policy encouraging settlement to allow the settlement documents in this case to be made public. Such reasoning would tend to discourage settlements rather than encouraging them.

The historical and philosophical analysis detailed above fails to demonstrate any such right of access to civil settlement documents that are of constitutional dimension. Therefore, we hold that the balancing test of the common law applies. We also hold that access to the transcripts of the settlement hearings falls under the common law standard. Although we recognize that these transcripts are records of a trial court proceeding, we believe that, for the reasons stated above regarding settlement documents, access to the transcripts should come under the common law standard. The transcripts are of hearings held solely for the purpose of approving the distribution of the settlement funds under section 573.02 and approving the minor settlement under section 540.08. Absent these statutes, designed to protect heirs and minors, no such hearings would be required.

## III.

Judge Schumacher found sufficient reasons under the facts presented in this case to allow the settlement documents and transcripts to be sealed. He based his decision on three criteria: (1) The fact that "disclosure of [the] settlement agreements could produce thefts, exploitation and improper use, trespass and injury to the [heirs]"; (2) the fact that disclosure "[would] impede further settlements [in other cases] and thereby foster more and protracted litigation"; and (3) the fact that the court and the county "would benefit by the settlement of those cases rather than lengthy trials." The Court of Appeals, however, found these reasons insufficient to justify restricting access.

■ As stated above, a presumption in favor of access exists under the common law. When a party seeks to restrict access to settlement documents and transcripts of settlement hearings, the court must balance the interests favoring access, along with the presumption in favor of access, against those asserted for restricting access. In order to overcome the presumption in favor of access, a party must show

strong countervailing reasons why access should be restricted. Absent such a showing, a court may not restrict access to settlement documents and transcripts that have been filed with the court. It should also be noted that simply because a party requests that access be restricted does not mean that the court may automatically do so. The court must make its own legal determination in each case.

■ The proper standard of review for questions of access under the common law standard is abuse of discretion. *See, e.g., Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36, 104 S.Ct. 2199, 2209, 81 L.Ed.2d 17 (1984); *Nixon,* 435 U.S. at 599, 98 S.Ct. at 1312; *see also Knoxville News-Sentinel Co.,* 723 F.2d at 473; *In re Application of National Broadcasting Company, Inc.,* 653 F.2d 609, 613 (D.C.Cir.1981). The trial court is in the best position to weigh fairly the competing needs and interests of the parties. *See Seattle Times,* 467 U.S. at 36, 104 S.Ct. at 2209. The right of access is therefore best left to the sound discretion of the trial court, "a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon,* 435 U.S. at 599, 98 S.Ct. at 1312.

■ Under this standard of review, we hold that Judge Schumacher did not abuse his discretion by denying access to the settlement documents. The historical and philosophical privacy of settlement documents, along with the relevant facts and circumstances in this case, demonstrate that the privacy interests asserted by the litigants were strong enough to justify restricting access. The litigants brought

forth evidence of physical intrusion into their lives that had already occurred. In addition, Judge Schumacher relied upon the fact that further intrusion could occur if the settlements were made public. Although the Court of Appeals considered the future harm speculative, we disagree with this characterization. In *Seattle Times Co.,* 467 U.S. 20, 104 S.Ct. 2199, the Supreme Court upheld a trial court's order protecting certain financial documents from disclosure based on reasons similar to those raised by Judge Schumacher. No abuse of discretion was found where the trial court relied upon the possibility of future intrusion and harassment in the plaintiffs' lives in a case that involved significant public interest. The same rationale applies in this case. The significant public interest in the Galaxy Airlines crash and the litigation surrounding it makes future intrusion into the litigants' lives more than mere speculation. Judge Schumacher therefore properly denied access to the settlement documents.

■ Judge Schumacher also properly denied access to the transcripts of the settlement hearings. As noted above, the transcripts were of hearings required by statute. At these hearings, the settlement documents and the amounts agreed upon were discussed. Because these discussions essentially include the information found in the settlement documents to which we have already denied access, it would be inconsistent to allow access to the transcripts. The transcripts raise the same privacy interests in favor of denying access as did the settlement documents. Access to these transcripts was therefore properly denied.[4]

---

4. We also hold that the Court of Appeals improperly applied a prior restraint analysis in this case. The court reasoned that since the settlement hearings had taken place in open court, the details of the settlements had been made public and could not therefore be constitutionally restrained. A prior restraint analysis, however, is improper in this case. Although the hearings were held in "open court," no one but the litigants attended. No details were released to the public or the media. Also, there was no evidence that any of the information in the trial court files was in the Star & Tribune's possession prior to Judge Schumacher's orders sealing

the files. Traditionally, a prior restraint analysis has been applied only where information is actually disseminated to the press or public and the government then attempts to halt its dissemination. *See, e.g., Smith v. Daily Mail Publishing Co.,* 443 U.S. 97, 102–04, 99 S.Ct. 2667, 2670–71, 61 L.Ed.2d 399 (1979); *Nixon,* 435 U.S. at 609, 98 S.Ct. at 1317; *Cox Broadcasting v. Cohn,* 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975). Because this case does not fall within the traditional prior restraint analysis, the Court of Appeals erred in adopting a first amendment standard based upon this analysis.

## IV.

█ Appellants also challenge the procedure used by the Star & Tribune and the other media representatives to seek review of Judge Schumacher's orders. Originally, Judge Schumacher allowed the Star & Tribune to intervene as of right in these cases for the purpose of challenging his orders sealing the files. When the Star & Tribune's motion to quash the orders sealing the files was denied, it, along with five other media representatives, sought a writ of prohibition from the Court of Appeals. Appellants challenged the propriety of the use of a writ in this case, arguing that, as an intervenor, the Star & Tribune was required to appeal the denial of its motion through ordinary appellate procedures. We, however, agree that the procedure used in this case was proper, but wish to discuss this procedure to give guidance for future cases.

█ When challenging a trial court's order sealing a civil file, a media representative or other person not a party to the original action may move to intervene as of right under Minn.R.Civ.P. 24.01. Rule 24.01 states:

Upon timely application anyone shall be permitted to intervene in an action when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Rule 24.01 establishes a 4–part test that a non-party must meet before being allowed to intervene as of right: (1) a timely application for intervention; (2) an interest relating to the property or transaction which is the subject of the action; (3) circumstances demonstrating that the disposition of the action may as a practical matter impair or impede the party's ability to protect that interest; and (4) a showing that the party is not adequately represented by the existing parties. Minn.R.Civ.P. 24.01; *see State ex rel. Bilder v. Township of Delavan*, 112 Wis.2d 539, 334 N.W.2d 252 (1983).

█ In cases such as the present, where a non-party seeks to intervene to challenge an order sealing a court file, Rule 24.01 provides the best method for allowing a non-party to challenge a trial court's order. The timeliness of the application to intervene, as in any case, will be based upon the particular circumstances involved and such factors as how far the suit has progressed, the reason for any delay in seeking intervention, and any prejudice to the existing parties because of a delay. *See, e.g., SST, Inc. v. City of Minneapolis*, 288 N.W.2d 225, 230 (Minn.1979); *Engelrup v. Potter*, 302 Minn. 157, 165, 224 N.W.2d 484, 489 (1974). Also, where access to court files is involved, a legally protected interest under Rule 24.01 can be found in the public's right to access under the Supreme Court Interim Rules on Access to Public Records.[5] If the document or record involved is a "public record" under Interim Rule 3, subd. 2, a legally protected interest arises. The party seeking access must then demonstrate that this interest relates to the property or transaction involved in the underlying action. *See Bilder*, 112 Wis.2d at 546–49, 334 N.W.2d at 257–58. Third, the potential intervenor must show that, as a practical matter, the disposition of the action may impair or impede the party's ability to protect its stated interest. Although this issue is for the trial court to resolve, we emphasize that it should be viewed from a practical standpoint rather than one based on strict legal criteria. Finally, the potential intervenor's interest must not be adequately represent-

---

**5.** Under the Interim Rules, "All public records within the judicial branch shall be open to inspection by any member of the public at all times during the regular office hours maintained by the custodian of these records." Rule 2 Interim Rules on Access to Public Records. The term "public records" is defined under Rule 3, subdivision 2. Contrary to the claims of Galaxy Airlines and several other appellants, the settlement documents in this case are not excluded from the definition of public records under Rule 3, subd. 2(j) or Rule 3, subd. 2(r)(iii).

ed by the existing parties. In cases such as this one, where the existing parties are opposed to access, this factor should not be difficult to meet.

 If a potential intervenor meets the test under Rule 24.01 the trial court should grant the motion to intervene for the limited purpose of challenging the trial court's order sealing court files. If the trial court denies the intervenor's request to unseal the files,[6] the intervenor may then seek a writ of prohibition from the court of appeals to review the trial court's denial.

 In order for a writ of prohibition to issue, three requirements must be met: (1) an inferior court or tribunal must be about to exercise judicial or quasi-judicial power; (2) the exercise of such power must be unauthorized by law; and (3) the exercise of such power must result in injury for which there is no adequate remedy. *Richardson v. School Board of Independent School District No. 271*, 297 Minn. 91, 210 N.W.2d 911 (1973); *Wasmund v. Nunamaker*, 277 Minn. 52, 151 N.W.2d 577 (1967). The writ is not one of right but of discretion and issues "only in extreme cases where the law affords no other adequate remedy by motion, trial, appeal, certiorari, or otherwise." *Wasmund,* 277 Minn. at 54, 151 N.W.2d at 579.

 In the present case, appellants assert that a writ of prohibition is improper because the Star & Tribune, as an intervenor, had the right to appeal the trial court's orders under Rules 103.03 and 105 of the Minnesota Rules of Civil Appellate Procedure. Because the Star & Tribune had the right to appeal, appellants argue, an adequate remedy existed and the writ was therefore improper. We, however, disagree with appellants' statement that the right to appeal in cases such as the present is an adequate remedy. Usually, "[t]he

fact that [an] appeal * * * may consume somewhat more time is not sufficient to justify circumventing the normal [appellate] procedure." *State ex rel. Ryan v. Cahill,* 253 Minn. 131, 134–35, 91 N.W.2d 144, 147 (1958). In many cases involving access to court files, however, time is of the essence. The time normally required for an appeal, along with the possibility of the issue becoming moot, *see Publicker Industries, Inc. v. Cohen,* 733 F.2d 1059, 1065–66 (3d. Cir.1984), or the possibility that the relevancy of the material to the intervenor will diminish with the passing of time, indicate that the normal appellate procedure would be inadequate. In addition, most cases involving questions of access are finally decided at an appellate level rather than at the trial court. Because a final decision on such questions is normally rendered only after an appellate proceeding, an expedited review is necessary in order to make the appellate court's decision something more than simply the answer to an issue that is moot or no longer relevant. For these reasons, the normal appellate procedure is inadequate in cases where access to court files is sought and therefore a writ of prohibition is proper.

 Finally, we wish to address an argument raised by appellants regarding the propriety of a writ of prohibition in cases of access. Appellants argue that the expedited procedures used under a writ of prohibition provide insufficient time to prepare a proper record or adequately present the legal issues involved. Although we realize the time constraints involved, we believe that this should not prevent the parties from adequately presenting the record or the issues on review. Through appendices, the parties can present the relevant documents or records to the court. If the sealed documents or records could be important on review, the court should be

---

6. When ruling on an intervenor's motion requesting access, the trial court must articulate for the record the competing interests of the parties and indicate how the court has weighed these interests along with any presumption in favor of access. The court must make "findings

specific enough that a reviewing court can determine whether the closure order was properly entered." *Press-Enterprise Co. v. Superior Court of California, Riverside County,* 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1984).

made aware of this in order to allow them adequate time to request the sealed documents from the trial court. In addition, the parties should formulate the issues fully prior to review. The legal issues or arguments presented to the trial court should be as extensive as those presented to the Court of Appeals on review.[7]

## V.

In sum, we hold that where access is restricted to settlement documents and transcripts of settlement hearings made part of a civil court file by statute, the proper legal standard to apply is one based on the common law. In the present case, application of this standard leads to the conclusion that access to the settlement documents and transcripts under seal through Judge Schumacher's amended orders should be denied.

Reversed; writ of prohibition vacated; amended orders reinstated.

---

7. Appellants have also raised the Star & Tribune's failure to fully comply with the requirements of the Interim Rules on Access to Public Records as a procedural bar to obtaining a writ of prohibition. Specifically, appellants argue that the Star & Tribune failed to exhaust its administrative remedies under Interim Rule 7 before seeking judicial review and therefore could not seek a writ of prohibition. This argument, however, is without merit. The ability to appeal a denial of access to the State Court Administrator under Interim Rule 7 is not an administrative remedy that requires exhaustion before seeking judicial review.

In addition, Galaxy argues that the procedure utilized in this case has deprived them of their right to due process of law. Because of our decision in this case, however, we need not address this issue.