**HOYT INVESTMENT COMPANY, etc., Appellant,**

v.

**BLOOMINGTON COMMERCE AND TRADE CENTER ASSOCIATES, etc., Respondent,**

**William O. Cooley, et al., Defendants,**

**Port Authority of the City of Bloomington, and City of Bloomington, Respondents.**

No. C7–87–536.

Court of Appeals of Minnesota.

March 29, 1988.

Robert J. Sheran, Luke H. Terhaar, Teresa B. Bonner, Lindquist & Vennum, Minneapolis, for Bloomington Commerce and Trade Center Associates, etc.

James J. Thomson, Jr., William P. Jordan, LeFevere, Lefler, Kennedy, O'Brien & Drawz, Minneapolis, for Port Authority of the City of Bloomington.

David R. Ornstein, City Atty., Bloomington, for City of Bloomington.

Considered and decided by WOZNIAK, C.J., and NIERENGARTEN and FLEMING, * JJ., without oral argument.

## OPINION

WOZNIAK, Chief Judge.

Appellant Hoyt challenges the trial court's interpretation of a Minnesota Court of Appeals Order directing entry of judgment in favor of Hoyt pursuant to a previous court of appeals opinion. The trial court directed entry of judgment against one respondent, Cooley–Petrie, but not against the other two respondents, the Port Authority and City of Bloomington.

Our review in this case was stayed by order of the Minnesota Supreme Court pending their review of our prior order. The supreme court issued its opinion January 22, 1988, thereby lifting the stay. We reverse and remand.

## FACTS

On July 21, 1981, Bloomington Commerce and Trade Center Associates (a partnership consisting of William O. Cooley and Arthur J. Petrie, hereafter "Cooley–Petrie") entered into a purchase agreement to buy from the Metropolitan Sports Facilities Commission the property on which Metropolitan Stadium was located. On July 30, 1981, Hoyt Investment Company (hereafter "Hoyt") sued Cooley–Petrie and the Commission seeking to have the sale set aside. This suit was settled in December 1981, with an agreement requiring Cooley–Petrie

James R. Bresnahan, Stewart C. Loper, Cochrane & Bresnahan, St. Paul, for Hoyt Investment Co., etc.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

to pay Hoyt $250,000 upon closing of the July 21 purchase agreement.

Cooley–Petrie eventually quit-claimed their interest in the property to the Port Authority of the City of Bloomington ("Port Authority").[1] Hoyt sued all parties to the sale negotiations, alleging, inter alia, that Cooley–Petrie owed it $250,000 pursuant to the earlier settlement agreement because a closing had occurred. Cooley–Petrie answered by general denial, and alleged in its counterclaim that Hoyt had breached the agreement by interfering with Cooley–Petrie's rights to acquire the property, and that the tortious interference caused Cooley–Petrie to sustain damages in excess of $50,000.

At trial, the district court considered evidence relating to Cooley–Petrie's argument that, because no closing had occurred within the meaning of the 1981 purchase agreement, Hoyt was not entitled to payment under the settlement agreement. It also heard specific evidence in support of Cooley–Petrie's counterclaim for tortious interference. However, Cooley–Petrie neither attempted to prove damages caused by the alleged interference nor requested any findings in this regard. The trial court found no closing had occurred within the meaning of the settlement agreement, so Hoyt was not entitled to any payment. Both parties submitted proposed findings with regard to Hoyt's alleged breach; the trial court did not rule on that question, but entered judgment in favor of all defendants. The trial court did specifically find that the Port Authority and City of Bloomington had not tortiously interfered with the contract. Hoyt appealed.

On July 8, 1986, this court reversed in *Hoyt Investment Co. v. Bloomington Commerce and Trade Center Ass'n.*, 390 N.W.2d 325 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Sept. 24, 1986) (hereaf-

ter *Hoyt I*). The parties' appellate briefs made no reference to the question of Hoyt's alleged breach of the settlement agreement. This court did not address the issue other than to say that Hoyt was entitled to recover, as a closing had occurred within the meaning of the agreement. This court determined:

> [Hoyt] is entitled to recover $250,000 plus interest as escrowed pursuant to the Cooley–Petrie/Port Authority quit claim on closing.

*Id.* at 333.

Cooley–Petrie petitioned the supreme court for further review of *Hoyt I*. The petition for review made no reference to Cooley–Petrie's counterclaim or Hoyt's alleged breach of contract as an alternative defense to Hoyt's $250,000 claim. (*Hoyt Investment Co. v. Bloomington Commerce and Trade Center Associates*), 418 N.W.2d 173, 174–75 (Minn.1988, *pet. for reh'g denied* (Minn. March 7, 1988) (hereafter *Hoyt II*). The supreme court denied further review of *Hoyt I* on September 24, 1986.

The parties returned to the trial court. On October 8, 1986, Hoyt obtained an ex parte order for judgment against Cooley–Petrie, the Port Authority, and the City of Bloomington. The defendants moved to vacate the order due to its ex parte nature, and also claimed it was premature until the trial court disposed of the undecided question of Hoyt's breach. The trial court vacated the ex parte order and indicated its willingness to hear arguments with regard to the undecided contract claim.

Hoyt petitioned this court for alternate writs of prohibition or mandamus directing the trial court to enter judgment in accordance with *Hoyt I*. This court concluded Cooley–Petrie was barred from asserting the undecided claim and directed entry of judgment pursuant to *Hoyt I*. Within 30

---

1. On June 15, 1984, Coolie–Petrie agreed to quit claim its interest in the property to the Port Authority. The Port Authority agreed to pay Coolie–Petrie $2,147,000. The Port Authority withheld $250,000 of this money, pursuant to a clause in the agreement which allowed for retention of the money in order to hold the Port Authority and City harmless from any claims that might be asserted by Hoyt. No trial court findings were made regarding the nature of these funds. Following the original trial court order for judgment in favor of all the respondents (and before this court's opinion reversing the original trial court judgment), the Port Authority released the $250,000 to Cooley–Petrie.

days of this court's order, Cooley–Petrie petitioned the supreme court for review of the extraordinary writ.

Despite the pending petition for review at the supreme court, the trial court ordered judgment against Cooley–Petrie in the amount specified in *Hoyt I*. It did not order judgment against the Port Authority and City of Bloomington. In doing so, the trial court noted that it wished to comply with both *Hoyt I* and the extraordinary writ. The trial court outlined a number of reasons for refusing to order judgment against the Port Authority and City of Bloomington.

Hoyt then moved to include the Port Authority and City of Bloomington in the order for judgment; the trial court denied this motion based on the fact that a petition for review was pending before the supreme court.

Shortly thereafter, the supreme court granted Cooley–Petrie's petition for review of this court's January 6 extraordinary writ. By then, judgment had been entered pursuant to the trial court's February 6, 1987 order.

Hoyt appealed the trial court's refusal to enter judgment against the Port Authority and City of Bloomington, resulting in the case now before us (hereafter *Hoyt III*). After the parties briefed and argued the issues currently before this court, the supreme court issued a stay of *Hoyt III* "pending final disposition by [the supreme] court" of the appeal involving the earlier extraordinary writ.

On January 22, 1988, the supreme court issued its opinion reviewing this court's January 6, 1987 extraordinary writ. It upheld the grant of the writ, but on other grounds than relied upon by the court of appeals:

> In our view, it is critical to note that Minn.R.Civ.App.P. 128.02, subd. 1(e) imposes upon counsel the obligation to state with specificity in their respective briefs the precise nature of the relief sought from the appellate court. Cooley–Petrie should have explicitly informed the appellate court that, in the event [the court] disagreed with the trial

court's finding that no "closing" occurred, a remand to the trial court for disposition of the interference claim was warranted.

*Hoyt II*, at 175–76 (citation omitted). The supreme court noted that the court of appeals should have recognized the appropriateness of remand for determination of the interference claim prior to any award of damages to Hoyt. However, our opinion merely directed entry of judgment:

> [Hoyt] is entitled to recover $250,000 plus interest as escrowed pursuant to the Cooley–Petrie/Port Authority quit claim on closing.

*Hoyt I* at 333.

The supreme court, however, went on to note that while both Cooley–Petrie and the court of appeals failed to recognize the necessity of remand, Cooley–Petrie was provided an opportunity to correct the error. Minn.R.Civ.App.P. 117 allowed them to petition the supreme court for further review. They did this, but did not mention this court's failure to remand. Therefore,

> once [*Hoyt I*] became final by virtue of the denial of the petition for further review, the trial court was required to cause the entry of judgment in accordance with that decision without regard to its earlier declination to decide whether Cooley–Petrie had proved their claim of interference with contract. That claim was extinguished by operation of the decision.

*Hoyt II*, 418 N.W.2d at 176.

As the supreme court's opinion has been issued, its prior stay of this court's proceedings is no longer in effect. We then return to the appeal before us, from the judgment entered during the pendency of the petition for review of our January 6, 1987 extraordinary writ. The writ directed the trial court to enter judgment pursuant to our earlier opinion, *Hoyt I*. The trial court entered judgment against Cooley–Petrie, but not against the Port Authority and City of Bloomington.

## ISSUES

1. Does the application of Minn.R.Civ. App.P. 136.02 deprive the trial court of

jurisdiction pending the outcome of an appeal to the supreme court of a writ of mandamus issued by the court of appeals?

2. Did the trial court err in refusing to enter judgment against respondents Port Authority and the City of Bloomington?

## ANALYSIS

■ 1. Rule 136.02 of the Minnesota Rules of Civil Appellate Procedure provides that:

[T]he clerk of the appellate courts shall enter judgment pursuant to the decision or order not less than 30 days after the filing of the decision or order. The service and filing of a petition for review to, or rehearing in, the Supreme Court shall stay the entry of the judgment. Judgment shall be entered immediately upon the denial of a petition for review or rehearing.

The comment to that rule states that:

Judgment will not be entered for 30 days after the filing of a decision or order to allow the filing of a petition for review to, or rehearing in the Supreme Court. In the event either petition is made and denied, judgment will be entered immediately.

The question before this court is whether the above rule applies to the entry of judgment on an order issued under Rule 120, Extraordinary Writs. If it does, the trial court was deprived of jurisdiction during the 30-day period following the order filed by this court on January 8, 1987, directing the trial court to enter judgment on the earlier decision of this court, *Hoyt I.* The service and filing of the petition for review to the supreme court would stay the entry of judgment until the supreme court had ruled.

Case law indicates Rule 136.02 deprives the trial court of jurisdiction during the pendency of an appeal from an extraordinary writ issued by this court. In *Minneapolis Star & Tribune Co. v. Schumacher,* 392 N.W.2d 197 (Minn.1986), the court of appeals issued a writ vacating the trial court's orders closing a number of files from public inspection. This writ was issued on March 11, 1986. On March 10, the

supreme court had issued an order staying the court of appeals's decision pending the outcome of the appeal to the supreme court. The supreme court granted the petition for further review on March 27, 1986.

In its decision, the court notes:

On April 25, 1986, after we had stayed the Court of Appeals decision and accepted this case for further review, Judge Schumacher amended his original orders sealing the files. * * * Judge Schumacher, however, was without jurisdiction to amend his original orders since at the time of the amendments, the case was before us on appeal.

*Id.* at 201–202 n. 3.

*Minneapolis Star & Tribune* clearly stands for the proposition that the trial court is deprived of jurisdiction even if the court of appeals's decision being appealed from is an extraordinary writ. *See also State v. Grose,* 396 N.W.2d 874 (Minn.Ct. App.1986) (holding that the trial court could not obtain jurisdiction over a matter on appeal until 30 days after the filing of the appellate court's order).

This court's extraordinary order was issued on January 6, 1987, and filed on January 8, 1987. The trial court ordered judgment against Cooley–Petrie on February 5, 1987; it was filed on February 6, 1987, within 30 days of the filing of the extraordinary writ. Rule 136.02 dictates that judgment shall not be entered during the 30 days after the January 8, 1987 filing of a decision of the court of appeals. As Cooley–Petrie filed a petition for review to the supreme court within that period, the entry of judgment was stayed. The trial court did not have jurisdiction to enter judgment in this matter, and the judgment is void.

Appellant Hoyt argues that Rule 136.02 applies to entry of judgment by the appellate court, not the trial court. The application of the rule in *Grose* and *Minneapolis Star & Tribune Co.,* which both indicate that the rule operates to deprive the *trial court* of jurisdiction, precludes this argument.

2. As we have determined the trial court did not have jurisdiction to enter judgment in this matter, we need not reach the merits of Hoyt's substantive claim. In the interest of bringing this litigation to a close, however, we note our agreement with the reasons enumerated by the trial court in denying Hoyt's escrow claim. Additionally, it appears this court erroneously adopted the escrow language used in *Hoyt I* from statements made by counsel at oral argument in that case; we made no specific factual finding that there was an escrow agreement for the benefit of Hoyt.

## DECISION

As Rule 136.02 applies to the situation where a party has appealed from the issuance of an extraordinary writ, the trial court did not have jurisdiction pending the outcome of the supreme court's issuance of *Hoyt II.* The judgment of the trial court is reversed and remanded with directions to enter judgment in accordance with *Hoyt I,* this court's extraordinary writ, *Hoyt II,* and this opinion.

Reversed and remanded.