In the Matter of **GLAXOSMITHKLINE PLC.**

Nos. A04–2150, A04–2151.

Supreme Court of Minnesota.

July 14, 2005.

Mike Hatch, Attorney General, Michael J. Vanselow, Assistant Attorney General, St. Paul, MN, for Appellant.

Michael A. Lindsay, Dorsey & Whitney LLP, Minneapolis, MN, George S. Carey, Sara D. Schotland, Cleary Gottlieb Steen & Hamilton, Washington, D.C., for Respondent.

Charles R. Shreffler, Mohrman & Kaardal, Minneapolis, MN, Margaret M. Zwisler, Elizabeth B. McCallum, Washington, D.C., for Amicus Pharmaceutical Research and Manufacturers of America.

Mark R. Anfinson, Minneapolis, MN, for Amicus Minnesota Newspaper Association.

## OPINION

HANSON, Justice.

We review orders of the court of appeals dismissing two appeals by appellant State of Minnesota from an order of the Hennepin County District Court determining that certain discovery documents produced pursuant to a Civil Investigative Demand were confidential and could not be made public. The court of appeals denied discretionary review under Minn. R. Civ.App. P. 105.01 and a separate panel then dismissed the appeal of right under Minn. R. Civ.App. P. 103.03. We granted the state's petitions for review of both orders and consolidated the matters. We reverse the dismissal of the appeal of right and remand to the court of appeals for consideration of the merits.

A Civil Investigative Demand (CID) is a discovery tool provided by statute to aid the state in the investigation of suspected violations of Minnesota laws. Minnesota Statutes § 8.31, subd. 2 (2004), authorizes the attorney general to

> obtain discovery from any person regarding any matter, fact or circumstance, not privileged, which is relevant to the subject matter involved in the pending investigation, in accordance with the provisions of this subdivision. The discovery may be obtained without commencement of a civil action and without leave of court * * *.

The state served a CID on respondent GlaxoSmithKline plc (GSK), a pharmaceutical company that the state suspected of committing antitrust violations by preventing Canadian pharmacies from supplying prescription drugs to United States consumers. The CID requested the production of documents concerning, among other things, GSK's sales of drugs in Canada and its communications with Canadian pharmacies that sold drugs in the United States.

Before any documents were produced, GSK and the state entered a Confidentiality Agreement that (1) permitted GSK to mark documents as "confidential" if they contained trade secret information or if GSK could assert "another legal basis for treating the documents as confidential, including * * * commercial information that could be subject to a protective order pursuant to Minnesota Rule of Civil Procedure 26.03"; (2) required the state to use confidential documents solely for the "investigation and any litigation arising from the investigation"; and (3) stated that if the state objected to a confidentiality designation or received a third-party request for access to a document, the state would give 10–day notice to GSK and GSK then could move the district court to resolve the issue. The Confidentiality Agreement specified that if the state were to commence litigation, the agreement "shall continue to govern * * * until such time as the Court should modify, terminate, or supersede it."

After GSK produced some documents, the state brought a motion in the Hennepin County District Court to compel production of further documents, and GSK countered with a motion for a protective order. The court granted a Protective Order that largely mirrored the Confidentiality Agreement, but also contained a provision stating that confidential documents filed with the court in any resulting litigation must be filed under seal, "pending further Order of the presiding judge in such proceedings." GSK then produced additional documents—the vast majority of which were marked as "confidential." The state filed a second motion in Hennepin County District Court for an order declaring that about 45 of those documents were

not confidential under the Confidentiality Agreement, the Protective Order, the Minnesota Government Data Practices Act (MGDPA), Minn.Stat. ch. 13 (2004), or Minn. R. Civ. P. 26.03 (which governs protective orders).

Five days after a hearing on its motion, the state commenced a civil antitrust action against GSK in Ramsey County District Court and provided a copy of the complaint to the judge presiding over the CID proceeding in Hennepin County. On October 13, 2004, the Hennepin County District Court denied the state's motion, ruling that the documents were to remain confidential because (1) civil investigative data do not become "inactive" under the MGDPA when a suit is commenced; (2) the documents were "petitioning documents subject to First Amendment privilege," thus disclosure was not required under Minn. R. Civ. P. 26.03; and (3) public disclosure was not permitted by terms of the Confidential Agreement and the Protective Order (the CID order).

The state appealed the CID order by simultaneously filing a Notice of Appeal and a Petition for Discretionary Review. A three-judge special-term panel of the court of appeals denied discretionary review under Minn. R. Civ.App. P. 105.01, holding that the petition "does not establish that the district court's enforcement of the state's agreement to maintain confidentiality (even if litigation resulted) warrants discretionary review." *In the Matter of GlaxoSmithKline plc*, No. A04–2151 (Minn.App. Dec. 8, 2004).

A separate special-term panel of the court of appeals subsequently granted GSK's motion to dismiss the state's appeal of right on grounds that the appeal was taken from a nonappealable order. *In the* *Matter of GlaxoSmithKline plc*, No. A04–2150 (Minn.App. Dec. 22, 2004). The court rejected the state's first argument that the CID order was a final order affecting a substantial right made in a special proceeding under Minn. R. Civ.App. P. 103.03(g). The court held that "[a] motion to compel compliance with a CID under Minn.Stat. § 8.31, subd. 2a, is not a special proceeding because a CID is a pretrial discovery tool, not a remedy." The court further rejected the state's arguments that the CID order was appealable under other parts of rule 103.03—as an injunction under part (b), as a collateral order under part (j), or as an order that determines the action and prevents a judgment under part (e).

The state submitted two petitions for review to this court, asking us to reinstate the appeal and remand to the court of appeals. Then, on brief, the state argued that we should decide the merits of the CID order, even though not requested in the petitions for further review. GSK argues that this is not an "exceptional case" warranting departure from our usual procedure to only review issues raised in the petition for further review.

I.

█ We begin our analysis with the state's first argument that the CID order was appealable of right as "a final order, decision or judgment affecting a substantial right made in an administrative or other special proceeding." Minn. R. Civ. App. P. 103.03(g).[1] We apply de novo review to court of appeals' interpretations of the rules of civil appellate procedure. *See Kastner v. Star Trails Ass'n*, 646 N.W.2d 235, 238 (Minn.2002).

---

1. We have examined a CID order once before and did so under discretionary review. *Kohn v. State*, 336 N.W.2d 292, 295–97 (Minn. 1983). But we did not explain why discretionary review was selected or even discuss review as of right. *Id.* at 294.

■ First, we examine whether the CID order was a "final order" under rule 103.03(g). We have defined a final order as one that "ends the proceeding as far as the court is concerned or that 'finally determines some positive legal right of the appellant relating to the action.'" *In re Estate of Janecek*, 610 N.W.2d 638, 642 (Minn.2000) (holding that the order disqualifying an attorney in a probate proceeding was a final order, and citing *Weinzierl v. Lien*, 296 Minn. 539, 540, 209 N.W.2d 424, 424 (1973)). The CID order may be considered final because it determined all issues presented to the court in the CID proceeding. This conclusion parallels federal law, which generally recognizes that orders from proceedings related to CIDs and administrative subpoenas are appealable as "final decisions" of the district courts under 28 U.S.C. § 1291 (2000).[2] *Cf. Gordon v. Microsoft Corp.*, 645 N.W.2d 393, 399–400 (Minn.2002) (examining federal law to determine standards for appealability of class certification orders in Minnesota courts).

■ Next, we examine whether a "substantial right" is at issue. Rule 103.03(g) does not define substantial right, and our prior interpretations of the words have been fact specific. *See In re Janecek*, 610

N.W.2d at 642 (indicating that a person has substantial right to be represented by an attorney of one's choice); *In re Trust of Tufford*, 275 Minn. 66, 67 n. 1, 145 N.W.2d 59, 60 n. 1 (1966) (holding that right to terminate a trust is a substantial right); *see also* Douglas D. McFarland & William J. Keppel, *Minnesota Civil Practice* § 2719 (3d ed.1999) (observing that "the appellate court will rarely find an order in a special proceeding nonappealable on the ground that it does not affect a *substantial right*"); *Black's Law Dictionary* 1349 (8th ed.2004) (defining substantial right as "[a]n essential right that potentially affects the outcome of a lawsuit and is capable of legal enforcement and protection, as distinguished from a mere technical or procedural right").

The state suggests that a substantial right is at issue because the order requiring the state to keep the documents confidential will envelop the entire litigation in a "shroud of secrecy," requiring the trial and any appeals to take place behind closed doors. GSK counters that no substantial right is at issue because the state is not hindered from prosecuting the merits of the antitrust case, and the CID order may be appealed after the merits ultimately are decided. The court of appeals did

**2.** At least three federal statutes specify that orders enforcing federal CIDs are appealable under 28 U.S.C. § 1291. *See* 15 U.S.C. § 57b–1(h) (2000) (Federal Trade Commission's CID); 15 U.S.C. § 1314(e) (2000) (federal antitrust CID); 31 U.S.C. § 3733(j)(5) (2000) (False Claims Act CID). We have not previously examined the appealability of attorney general administrative subpoenas issued pursuant to Minn.Stat. § 8.16 (2004) and express no opinion on the question here. But it is helpful for our present analysis to note that federal courts of appeals have held administrative subpoenas to be appealable as final decisions under 28 U.S.C. § 1291. *See Univ. of Med. & Dentistry of N.J. v. Corrigan*, 347 F.3d 57, 63 (3d Cir.2003); *United States v. Legal Servs. for New York City*, 249 F.3d

1077, 1080–81 (D.C.Cir.2001); *In re Subpoena Duces Tecum*, 228 F.3d 341, 345–46 (4th Cir.2000); *E.E.O.C. v. Citicorp Diners Club, Inc.*, 985 F.2d 1036, 1038 (10th Cir.1993); *Sheehan v. Doyle*, 513 F.2d 895, 898 (1st Cir.1975). A decision from the Fifth Circuit Court of Appeals is particularly instructive. In *In re Kaiser Aluminum & Chemical Co.*, the panel sua sponte asked the parties to argue whether an order involving an administrative subpoena was appealable under 28 U.S.C. § 1291, as an interlocutory appeal under 28 U.S.C. § 1292 (2000), or under the collateral order doctrine. 214 F.3d 586, 589 (5th Cir. 2000). The panel concluded that appeal of right was most appropriate because "[a]n order enforcing an administrative subpoena is considered a final order." *Id.*

not examine whether a substantial right was at issue.

▮▮▮▮ Although the state's prediction of a "secret" trial is premature, we cannot ignore that court proceedings and documents enjoy a "presumption of openness" that generally may be overcome only by showing that a party's constitutional rights would be at risk if the proceeding or document is made public. *See Minneapolis Star & Tribune Co. v. Schumacher*, 392 N.W.2d 197, 203–04 (Minn.1986) (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573, 575–81, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980)); *see also Gannett Co., Inc., v. DePasquale*, 443 U.S. 368, 386 n. 15, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979) ("For many centuries, both civil and criminal trials have traditionally been open to the public."). In civil actions, "[e]ach case involves a weighing of the policies in favor of openness against the interests of the litigant in sealing the record." *In re Rahr Malting Co.*, 632 N.W.2d 572, 576 (Minn. 2001) (citing *Schumacher*, 392 N.W.2d at 202–03).

▮▮▮▮ GSK is correct that documents produced as discovery are not presumed to be public and that district courts have broad discretion to issue protective orders, such as to protect trade secrets and similar commercial information. Minn. R. Civ. P. 26.03(g); *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984) (holding that "pretrial depositions and interrogatories are not public components of a civil trial"). And GSK has claimed that a constitutional right—a "petitioning privilege" under the First Amendment to the United States Constitution—is implicated. *Compare Schumach-*

*er*, 392 N.W.2d at 204 (holding that there is no First Amendment right for the public to access sealed settlement documents and transcripts). Still, district courts presiding over civil actions are directed to weigh "policies in favor of openness against the interests of the litigant in sealing the record." *In re Rahr Malting Co.*, 632 N.W.2d at 576.

▮▮▮▮ We cannot ignore the attorney general's statutory duty to enforce state antitrust laws. Minn.Stat. § 8.31, subd. 1 (2004) (requiring attorney general to investigate suspected antitrust violations under Minn.Stat. § 325D.49–.66 (2004)). To be fully effective, such enforcement usually must be done publicly, for educational purposes and to deter similar conduct by others. *See, e.g., Blue Shield of Virginia v. McCready*, 457 U.S. 465, 473, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982) (referencing "broad remedial and deterrent objectives" of federal antitrust law). In addition, the state is a party to the Confidentiality Agreement and has a right to seek enforcement of its terms, including enforcement of the state's right to object to GSK's confidentiality designations and to seek a judicial determination of confidentiality. Similarly, the state has the right under the Protective Order to object to GSK's designations and to seek court review of those designations. Finally, the state has the right under the MGDPA to "bring an action in the district court in the county where the data is maintained to obtain disclosure of data classified as confidential or protected nonpublic." Minn.Stat. § 13.39, subd. 2a (2004). We conclude that substantial rights of the state are at issue in this appeal.[3]

---

**3.** To the extent that our determination of whether the state's rights are substantial involves consideration of the likelihood that the state will prevail on the merits of the appeal, we observe that the district court's analysis underlying the CID order may not have been complete. The district court's conclusion that the state's request was precluded by the Protective Order or the Confidentiality Agreement does not consider that both documents

■ Finally, we examine whether the CID order resulted from a "special proceeding." Rule 103.03(g) does not define the words "special proceeding." We have preferred an interpretation that preserves the parties' rights to appeal where appropriate. As we observed in *Willeck v. Willeck:*

> A special proceeding is defined as usually meaning such a proceeding as may be commenced independently of a pending action by petition or motion, upon notice, in order to obtain special relief. Its existence is not dependent upon the existence of any other action and it therefore is not an integral part of the original action but is separate and apart. It adjudicates by final order a substantial right distinct from any judgment entered upon the merits of the original action.

286 Minn. 553, 554 n. 1, 176 N.W.2d 558, 559 n. 1 (1970).

On occasion, we have referenced the remedial nature of a special proceeding. *See In re Janecek,* 610 N.W.2d at 642 (stating that a special proceeding is a "generic term for a remedy that is not part of the underlying action and that is brought by motion or petition, upon notice, for action by the court independent of the merits of the underlying action"); *Chapman v. Dorsey,* 230 Minn. 279, 283, 41 N.W.2d 438, 440–41 (1950) (stating that a special proceeding is a "generic term for any civil remedy in a court of justice which is not of itself an ordinary action"). The court of appeals held that a CID order does not result from a special proceeding "because

a CID is a pretrial discovery tool, not a remedy."

We view a CID order differently. The attorney general is authorized to serve a CID "without commencement of a civil action," and the district court is authorized to order compliance with CID procedures. Minn.Stat. § 8.31, subds. 2, 2a (2004). In a CID proceeding, the ultimate remedy to be provided by the court is the ordering of the production of discovery, which includes any determination of the public or confidential nature of discovery documents. The CID proceeding is not merged into any subsequent litigation, and discovery produced pursuant to a CID may or may not lead to a separate action. Thus, a CID order should not be characterized as a "pretrial discovery tool."

A CID enforcement proceeding that finally determines the confidentiality of documents produced in response to a CID meets our prior definitions of a "special proceeding." It "is not dependent upon the existence of any other action." *Willeck,* 286 Minn. at 554 n. 1, 176 N.W.2d at 559 n. 1. It is commenced and enforced "independent of the merits of the underlying action." *In re Janecek,* 610 N.W.2d at 642. In addition, GSK had notice of the proceeding and participated in it. For these reasons, we conclude that the CID order arose from a special proceeding.

■ We hold that when a district court issues an order in a CID proceeding that finally determines the confidentiality of documents produced, the order may be appealed of right under Minn. R. Civ.App.

specifically authorized the state to object to GSK's confidentiality designations and to seek district court review. The conclusion that the documents are not "inactive investigative data" under the MGDPA may answer the wrong question. The classification of inactive investigation data is relevant when a civil action is not brought. Minn.Stat. § 13.39,

subd. 3 (2004). The pertinent question under the MGDPA may be whether commencement of the Ramsey County action makes the investigative data public. *Id.,* subd. 2a. And the conclusion that there is a First Amendment privilege for "petitioning documents" is not clearly recognized in case law.

P. 103.03(g). Because this holding resolves the appealability question, we need not consider whether the order may be appealed under other parts of rule 103.03, or whether the court of appeals abused its discretion by denying discretionary review.

## II.

 Next, we examine whether it is appropriate for us to consider the merits of the CID order as to whether the documents are confidential. The state's petitions to this court requested remand to the court of appeals and did not request that we examine the merits. Subsequently, the state argued on brief that we should decide the issues on the merits in the "interest of justice" pursuant to Minn. R. Civ. App. P. 103.04.

 Generally, we do not address issues that were not raised in a petition for review. *Anderly v. City of Minneapolis,* 552 N.W.2d 236, 239–40 (Minn.1996); *accord Northwest Racquet Swim & Health Clubs, Inc. v. Deloitte & Touche,* 535 N.W.2d 612, 613 n. 1 (Minn.1995); *Hapka v. Paquin Farms,* 458 N.W.2d 683, 685–86 (Minn.1990). But the state is correct that we may deviate from our usual procedure in the interest of justice. Minn. R. Civ. App. P. 103.04; *see also Putz v. Putz,* 645 N.W.2d 343, 350 (Minn.2002) (concluding that "justice requires" consideration of child-support issue not previously raised because the court system has a key role in ensuring welfare of children).

It is unclear whether GSK might have argued its position on the merits more extensively had these issues been described in the state's petition for further review and fully developed in the state's brief. For this reason, we apply the general rule that we will consider only issues raised in a petition for review. *Anderly,* 552 N.W.2d at 239–40. We reverse the order of the court of appeals dismissing the appeal of right in case no. A04–2150 and remand to the court of appeals. *See, e.g., Pulju v. Metro. Prop. & Cas.,* 535 N.W.2d 608, 609 (Minn.1995). In light of our ruling in case no. A04–2150, we dismiss case no. A04–2151 as moot.

Reversed and remanded to the court of appeals (No. A04–2150); dismissed as moot (No. A04–2151).