In the Matter of the WELFARE OF
the Children of L.L.P., A.J.H.
and J.M.L., Parents.

No. A13–0545.

Court of Appeals of Minnesota.

Aug. 19, 2013.

Wright S. Walling, Stacia W. Driver, Brandon M. Zumwalt, Walling, Berg & Debele, P.A., Minneapolis, MN, for appellant grandparents.

James C. Backstrom, Dakota County Attorney, Jennifer L. Jackson, Assistant County Attorney, Hastings, MN, for respondent Dakota County Social Services.

Pamela Kigham, Guardian ad Litem, West St. Paul, MN, guardian ad litem.

Considered and decided by STAUBER, Presiding Judge; SCHELLHAS, Judge; and HOOTEN, Judge.

## OPINION

HOOTEN, Judge.

Appellants, grandparents of a minor child, challenge the district court's denial of their motions for intervention, adoptive placement, and enforcement of a relative contact agreement. Respondent county argues that appellants' appeal should be dismissed for lack of jurisdiction. The or-

der denying appellants' motion for adoptive placement is appealable. Because the district court improperly weighed appellants' supporting documents against the county's allegations and appellants have set forth a prima facie case of unreasonableness on the part of the county, we reverse and remand for an evidentiary hearing. But we affirm the district court's denial of appellants' motion to enforce a relative contact agreement.

## FACTS

J.P. was born on July 7, 2011. Her biological mother is L.L.P. and her biological father is M.L. L.L.P. also has 12-year-old twins with A.J.H. J.P. and the twins were adjudicated children in need of protection or services in July 2011 and placed in relative foster care the following month with L.L.P.'s sister and brother-in-law (hereinafter prospective adoptive parents). The parental rights of all three parents were later terminated.

Appellants, J.P.'s paternal grandparents, had an oral agreement with Dakota County Social Services (DCSS) and prospective adoptive parents allowing visitation with J.P. For a year and a half, J.P. spent time with appellants on Wednesday evenings and weekends.

Appellants became interested in adopting J.P., but were informed by DCSS that "it is the policy of the Minnesota Department of Human Services that siblings, whether full, half, or step, be placed together in foster and adoptive homes." In response to their expressed interest in adopting J.P., DCSS provided appellants an adoption home study at no expense. Prior to completing the home study, the home-study worker informed them that DCSS would not recommend them as an adoptive placement unless they adopted all three children. Appellants asserted that this was not feasible because accepting three children into their home would be too difficult and they have no relationship with J.P.'s half-siblings. The home study was completed in August 2012 and reported that appellants meet the required standards for adoption of J.P., but DCSS determined that it is in J.P.'s best interests to remain with prospective adoptive parents because they are willing to adopt all three children.

Appellants' relationship with prospective adoptive parents and DCSS deteriorated. DCSS was concerned that appellants allowed contact between J.P. and her biological father, sought medical treatment for J.P. without prior authorization, took J.P. to their cabin without prior notice, and made several unsubstantiated child-protection reports against prospective adoptive parents. Appellants, prospective adoptive parents, and DCSS discussed formalizing a contact agreement between appellants and J.P. Appellants claim that they received a contact agreement drafted by DCSS that outlined the existing visitation arrangement. They responded by submitting a proposed contact agreement that allowed one overnight per month, one shorter visit per week, an occasional holiday, and a minimum of two weeks in the summer. DCSS replied with a highly restrictive agreement—two supervised visits per year at the Children's Safety Center.

Appellants moved for permissive intervention in the juvenile court files to gain party status. Appellants filed a second motion requesting that they be considered as an adoptive placement for J.P. and an evidentiary hearing. Appellants also moved, in the alternative, the district court to enforce the prior contact agreement that memorialized the oral agreement that had been in place for 18 months. In support of their motions, appellants submitted affidavits raising the following allegations: (1) they witnessed prospective adoptive father use excessive force against and yell at

J.P.; (2) prospective adoptive father struggles with sobriety and had been arrested twice for disorderly conduct; (3) the other children in the home told them that they are allowed to watch prospective adoptive father play a violent video game; (4) one of the children stated that he is responsible for some of J.P.'s care; and (5) on separate occasions, J.P. cried excessively when they picked her up from prospective adoptive parents' home, appeared dehydrated, and had diarrhea and a swollen vagina.

The district court denied appellants' motions. Appellants' motion for adoptive placement was denied because appellants did not make a prima facie showing that DCSS was unreasonable in failing to make the requested adoptive placement. The district court specifically noted that DCSS was "mandated by statute to place siblings together unless a court orders that the siblings may be separated." Because they failed to show that DCSS was unreasonable, the district court denied appellants' request for an evidentiary hearing. The district court also denied appellants' motion to intervene and request to enforce the contact agreement because no "signed" contact agreement existed.

This appeal follows.

## ISSUES

1. Is the order denying appellants' motion for adoptive placement appealable?

2. Did the district court abuse its discretion in denying appellants' motion for adoptive placement?

3. Did the district court err by refusing to enforce the contact agreement?

## ANALYSIS

### I.

■ DCSS argues that appellants' appeal taken from the district court's or-der denying their motion for adoptive placement should be dismissed because the order is not appealable. Questions of jurisdiction are reviewed de novo. *In re Welfare of J.R., Jr.,* 655 N.W.2d 1, 2 (Minn.2003).

In 2012, the legislature amended the statute regarding adoption progress reviews. *See* 2012 Minn. Laws ch. 216, art. 1, § 29, at 24. The new statute requires relatives seeking to be considered as an adoptive placement to file a motion for an order for adoptive placement. Minn.Stat. § 260C.607, subd. 6(a). The statute instructs that "[t]he motion and supporting documents must make a prima facie showing that the agency has been unreasonable in failing to make the requested adoptive placement." *Id.,* subd. 6(b). A prima facie showing of unreasonableness entitles movants to an evidentiary hearing, but a failure to make a prima facie showing requires the district court to dismiss the motion. *Id.,* subd. 6(c).

Here, the district court ruled that appellants did not make a prima facie showing of unreasonableness, and, accordingly, were not entitled to an evidentiary hearing. DCSS asserts that this order is not appealable under Minn.Stat. § 260C.607, subd. 6(g), and that this appeal must be dismissed. Under Minn.Stat. § 260C.607, subd. 6(g):

> [d]enial or granting of a motion for an order for adoptive placement *after* an evidentiary hearing is an order which may be appealed by the responsible social services agency, the moving party, the child, when age ten or over, the child's guardian ad litem, and any individual who had a fully executed adoption placement agreement regarding the child at the time the motion was filed if the court's order has the effect of termi-

nating the adoption placement agreement.

(Emphasis added). DCSS reads the statute to make an evidentiary hearing a prerequisite to an appeal.

■ DCSS's argument is not supported by the statute's plain language. "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2012). We first determine whether the statute's language is ambiguous and do so by construing the statute's words and phrases according to their plain and ordinary meaning. *Christianson v. Henke*, 831 N.W.2d 532, 536 (Minn.2013). "A statute is only ambiguous if its language is subject to more than one reasonable interpretation." *Id.* at 537. The plain language of Minn.Stat. § 260C.607, subd. 6(g), states that an order granting or denying an adoptive placement "after an evidentiary hearing" is appealable. Because the statute does not

address orders issued before an evidentiary hearing or orders that do not involve an evidentiary hearing, there is nothing in the plain language of the statute precluding appeals from those types of orders if they are otherwise appealable.[1]

■ Allowing appellants to appeal the order denying their motion for adoptive placement is consistent with Minn.Stat. § 260C.415, subd. 1 (2012), which allows appeals of final orders affecting a substantial right of aggrieved persons. We are required to interpret statutes so as to give effect to both a general and more specific statute if possible. *See* Minn.Stat. § 645.26, subd. 1 (2012) ("When a general provision in a law is in conflict with a special provision in the same or another law, the two shall be construed, if possible, so that effect may be given to both."). Minn.Stat. § 260C.415, subd. 1, is a general provision within the juvenile protection statutes, whereas Minn.Stat. § 260C.607, subd. 6(g), is a more specific provision.

1. Even if we determined that the language of the statute was ambiguous, the legislative history of the statute would not support DCSS's narrow interpretation of the statute. *See* Minn.Stat. § 645.16(7) (allowing consideration of legislative history to determine legislative intent when the words of a law are not explicit). Christeen Borsheim of the Department of Human Services testified before the Senate Committee on Health and Human Services that the new statutes ensure that, after a child is placed in foster care and the parents' rights are terminated, "a new legal process does not then start under the adoption legal process." Hearing on S.F. No. 1675 Before the S. Comm. on Health & Human Servs. (Feb. 15, 2012). She later explained:

> What's largely in this bill … is for the most part existing language that has moved references to adoptions of children under state guardianship which are currently found in chapter 259 out of that chapter into 260C which is the juvenile court act. This is done to lay out a more logical and legally sequential legal process for children from their entry into foster care through finalized

adoption. It creates a single legal process for foster care and adoption which will improve permanency outcomes for children and youth, it improves the transparency of this permanency process having all of the legal process in one place, and it achieves administrative simplification.

> . . . .

> In [the previous] process, once a child has had a termination of parental rights, they've been in foster care, gone through all the permanency proceedings, had a termination, [and] then they go into an entire new legal process in the adoption process. So [the new process] makes it a more seamless process for them and their families.

Hearing on S.F. No. 1675 Before the S. Comm. on Judiciary & Pub. Safety (Mar. 8, 2012). Borsheim's testimony indicates that the legislature sought to streamline the adoption process. Allowing appellants to challenge the denial of their motion for adoptive placement before the adoption is finalized, rather than after the adoption has taken place, effectuates the legislature's intent to reach finality more seamlessly.

Therefore, we interpret Minn.Stat. § 260C.607, subd. 6(g), to give effect to the right of an individual who wishes to be considered as an adoptive placement option, while at the same time give effect to the appeal rights of an aggrieved person whose substantial rights have been affected by a final order. Interpreting Minn. Stat. § 260C.607, subd. 6(g), to make an evidentiary hearing a prerequisite to an appeal of an order described in that provision, as DCSS proposes, would implicitly repeal Minn.Stat. § 260C.415, subd. 1, to the extent that Minn.Stat. § 260C.415, subd. 1, would have allowed appeals of final orders described in Minn.Stat. § 260C.607, subd. 6(g), without an evidentiary hearing. Repeal of statutes by implication is disfavored. *Fingerhut v. Comm'r of Revenue*, 278 N.W.2d 528, 531 (Minn. 1979).

■■■ And it is well-settled that a rule displaces an inconsistent statute with respect to matters of court procedure. *In re Welfare of Child of T.L.M.*, 804 N.W.2d 374, 376 (Minn.App.2011). "A matter is deemed procedural if it concerns the method by which factual and legal issues are determined and neither creates a new cause of action nor deprives a defendant of any defense on the merits." *Id.* (quotations omitted). "[T]he supreme court has the primary responsibility under the separation of powers doctrine to regulate matters of trial and appellate procedure" and, therefore, "the Rules of Juvenile Protection Procedure should control over the statute in juvenile protection cases." *J.R., Jr.*, 655 N.W.2d at 3. The relevant rule, here, is Minn. R. Juv. Prot. P. 47.02, subd. 1, which, like Minn.Stat. § 260C.415, subd. 1, permits an appeal to "be taken by the aggrieved person from a final order of the juvenile court affecting a substantial right of the aggrieved person." Minn. R. Juv. Prot. P. 47.02, subd. 1, does not create a

new cause of action or deprive a party of a defense relative to appellants' appeal, but addresses the process for appellate resolution of factual and legal issues.

This appeal satisfies the requirements of Minn. R. Juv. Prot. P. 47.02, subd. 1. The denial of appellants' motion is a "final order" because it "ends the proceeding as far as the court is concerned" relative to the substantial rights of appellants or "finally determines some positive legal right of the appellant[s] relating to the action." *In re GlaxoSmithKline PLC*, 699 N.W.2d 749, 754 (Minn.2005) (quotations omitted). By denying appellants' motion, the district court barred appellants from being considered as an adoptive placement for J.P. This denial affects a "substantial right" of appellants: the right to be considered an adoptive placement of their grandchild. *See id.* (stating that, in the context of a special proceeding, prior interpretations of "substantial right" have been fact specific and citing authority that an "appellate court will rarely find an order in a special proceeding nonappealable on the ground that it does not affect a substantial right") (quotation omitted). And appellants are "aggrieved" by the denial because their substantial right has been "adversely affected" by the district court's order. *See Black's Law Dictionary* 77 (9th ed.2009) (defining "aggrieved").

■■■ Finally, we note that our decision is consistent with the law regarding modification of custody. In the custody context, appealable orders include orders that deny, without an evidentiary hearing, motions to modify custody if the denial is based on the moving party's failure to allege a prima facie basis for modification. *See Griese v. Kamp*, 666 N.W.2d 404, 408–09 (Minn.App.2003) (reversing district court's denial of a motion to modify custody for failure to make a prima facie case and remanding for an evidentiary hearing),

*review denied* (Minn. Sept. 24, 2003); Minn. R. Civ.App. P. 103.03(h) (stating that an order granting or denying the modification of a custody provision in an existing judgment or decree is appealable).[2] But for this appeal, appellants would not be considered an adoptive placement and J.P.'s path to adoption and permanent placement would move forward without appellants having any other recourse. In that the district court's denial of appellants' motion for adoptive placement is a final order that ends the proceedings relative to their substantial rights, we hold that such order is appealable.

## II.

We now address the merits of appellants' appeal. Appellants argue that the district court abused its discretion by dismissing their motion and not holding an evidentiary hearing. Because Minn.Stat. § 260C.607, subd. 6, is a new statute, no standard of review exists for reviewing a denial of a motion for adoptive placement prior to holding an evidentiary hearing. Both parties cite to the standard of review for dismissals of motions for a modification of custody. *See* Minn.Stat. §§ 518.18, .185 (2012); *Geibe v. Geibe,* 571 N.W.2d 774, 777 (Minn.App.1997). We agree that this standard should apply here.

■ A motion for adoptive placement is analogous to a motion to modify custody. A party seeking a modification of custody must submit an affidavit asserting facts upon which the motion is based. Minn. Stat. § 518.185. The supreme court has interpreted the custody-modification stat-

utes to require that the petition allege a prima facie case by asserting facts that, if true, would provide grounds for a modification. *Nice–Petersen v. Nice–Petersen,* 310 N.W.2d 471, 472 (Minn.1981). Similarly, a relative or foster parent seeking to be an adoptive placement must file a motion and supporting documents that allege a prima facie case that the agency has been unreasonable in failing to make the requested adoptive placement. *See* Minn. Stat. § 260C.607, subd. 6(a), (b).

■ Applying the custody-modification standard, we first review de novo whether the district court properly treated the parties' supporting documents. *Boland v. Murtha,* 800 N.W.2d 179, 185 (Minn.App.2011). The district court must accept facts in appellants' supporting documents as true, disregard contrary allegations, and consider the non-moving party's supporting documents only to the extent that they explain or provide context. *Id.* Second, we review the district court's determination of whether appellants established a prima facie case for abuse of discretion. *Id.* Third, we review de novo whether the district court properly determined the need for an evidentiary hearing. *Id.* "Whether a party makes a prima facie case ... is dispositive of whether an evidentiary hearing will occur...." *Szarzynski v. Szarzynski,* 732 N.W.2d 285, 292 (Minn.App.2007).

Here, the district court improperly considered appellants' affidavits by weighing appellants' allegations against DCSS's conduct and the history of the proceedings, concluding that

---

**2.** DCSS also argues that this matter is analogous to the dismissal of CHIPS and TPR petitions for failure to make a prima facie showing of statutory factors, which are not subject to a further right of review. But DCSS fails to support its assertion with any legal argument or authority. Accordingly, we deem it waived. *See Ganguli v. Univ. of Minn.,* 512 N.W.2d 918, 919 n. 1 (Minn.App. 1994) (noting that we decline to address assertions not supported by legal analysis or citation).

These allegations in the context of the length of time involved, the scrutiny of [prospective adoptive parents'] home provided by [DCSS], [J.P.'s] age, stage of development and documented medical needs of a sensitive stomach and sensitive skin do not even raise a prima facie concern about the proposed adoptive placement ... let alone a prima facie case that [DCSS] failed to reasonably consider the [appellants'] request to adopt [J.P.]

The district court added that appellants' "allegations ... focus on concerns about [prospective adoptive father]" and that "[s]ome of the allegations are hearsay and some of the allegations are conclusory." We agree with the district court that conclusory allegations do not support a prima facie case, *see id.,* but appellants' affidavits largely contain specific, first-hand observations.

■ Considering appellants' allegations as true, we conclude that the district court abused its discretion by determining that appellants failed to establish a prima facie showing of unreasonableness. Appellant-grandmother's affidavit states that she witnessed prospective adoptive father use excessive force on J.P. by grabbing her leg and yelling at her while trying to put on her snowsuit; observed prospective adoptive father yell at the children for playing and tell them to go to bed even though it was mid-day; smelled alcohol on prospective adoptive father's breath; observed J.P. cry uncontrollably on one occasion; was concerned with J.P.'s medical care, as she had extended bouts of diarrhea, suffered from a swollen vagina, and, on one occasion, appeared dehydrated; saw bruises on J.P.; was told by another child in the household that he cares for J.P.; and learned that the children are allowed to watch prospective adoptive father play a violent video game. Both affidavits note appellants' significant and loving relationship with J.P. and state that DCSS would only consider them as an adoptive placement if they adopted J.P. and her two half-siblings.

■ Moreover, the district court erred as a matter of law by denying appellants' motion based on its assertion that DCSS was mandated to place siblings together. The district court ruled that DCSS "reasonably considered [appellants'] request to adopt [J.P.] but were statutorily obligated to consider other options when [appellants] refused to adopt [J.P.'s] siblings and appropriately placed [J.P.] and her siblings with [prospective adoptive parents]." DCSS conceded that the district court overemphasized the sibling placement "mandate" at oral argument. The concession is well-founded.

Minn.Stat. § 260C.617(a) (2012) requires that "[t]he responsible social services agency shall make every effort to place siblings together for adoption," but this is not without exception. Siblings should not be placed together when "it is documented that a joint placement would be contrary to the safety or well-being of any of the siblings." Minn.Stat. § 260C.212, subd. 2(d) (2012); *see also* Minn.Stat. § 260C.212, subd. 2(a) (2012) ("The policy of the state of Minnesota is to ensure that the child's best interests are met by requiring an *individualized determination of the needs of the child* and of how the selected placement will *serve the needs of the child* being placed.") (emphases added).

Because the district court weighed the evidence instead of taking appellants' allegations as true and erred as a matter of law by relying on DCSS's assertion that it must place the siblings together without considering the best interests of the indi-

vidual children, we reverse and remand for an evidentiary hearing.[3]

## III.

Appellants also argue that the district court erred by refusing to enforce a contact agreement that would have allowed them to continue their frequent visitation with J.P. The district court declined to enforce a visitation agreement because "[t]here is no signed written enforceable contact agreement to provide ongoing contact between [appellants] and [J.P.]"

Adopting parents and relatives may enter into communication or contact agreements that concern an adoptive child. Minn.Stat. § 260C.619(a) (2012).[4] "An agreement regarding communication with or contact between the child ... and a relative ... is enforceable when the terms of the agreement are contained in a *written court order*." Minn.Stat. § 260C.619(b) (emphasis added). Here, no contact agreement was ever contained in a written court order. The district court did not err by refusing to enforce a contact agreement when none existed.

Appellants claim that the district court erred by refusing to enforce the agreement because it was not "signed." Appellants are correct that the word "signed" does not appear in the statutes governing contact agreements. Instead, a contact agreement must be "approved in writing" by the prospective adoptive parents and the birth relatives and "contained in a written court order." Minn.Stat. § 260C.619 (b), (d) (2012). But "we will not reverse a correct decision simply because it is based on incorrect reasons." *Katz v. Katz*, 408 N.W.2d 835, 839 (Minn. 1987). Even if the district court erred by requiring the contact agreement to be signed, appellants still lack a contact agreement contained in a written court order.

## DECISION

Because an order denying a motion for adoptive placement for failure to make a prima facie showing of unreasonableness on the part of DCSS is appealable, we have jurisdiction to consider appellants' appeal. The district court weighed appellants' allegations contained in their moving documents instead of accepting them as

---

**3.** Appellants also argue that the district court abused its discretion by denying their motion for permissive intervention. *See* Minn. R. Juv. Prot. P. 23.02 (permitting any person to intervene as a party if the court finds that intervention is in the best interests of the child); *J.W. ex rel. D.W. v. C.M.*, 627 N.W.2d 687, 691 (Minn.App.2001) (noting that permissive intervention rulings are reviewed under an abuse-of-discretion standard), *review denied* (Minn. Aug. 15, 2001). Appellants clarified at oral argument that they moved to intervene solely because they were unclear on the procedure mandated by the new contested-adoption statute. Minn.Stat. § 260C.607 does not address whether a relative or foster parent must intervene to become a party in order to move to be considered an adoptive placement, but can be read to allow either (1) any relative or foster parent to make the motion or (2) only relatives and foster parents

who are already parties to make the motion. We need not resolve this issue because appellants meet either reading of the statute. First, appellants, as grandparents, are relatives. Second, we have already determined that appellants are entitled to an evidentiary hearing based on their motion and supporting documents. Appellants, on this record, are parties as a matter of law because they are persons "important to a resolution that is in the best interests of the child." Minn. R. Juv. Prot. P. 21.01, subd. 1(g), subd. 3(d).

**4.** We apply the juvenile protection statutes because this matter remains a juvenile-protection case. Communication or contact agreements "between an adopted minor, adoptive parents, and a birth relative or foster parents" are controlled by Minn.Stat. § 259.58 (2012).

true, and erred both by determining that DCSS must place siblings together in an adoptive placement and by refusing to hold an evidentiary hearing. For these reasons, we reverse in part and remand for an evidentiary hearing. We, however, affirm the district court's ruling refusing to enforce a contact agreement.

**Affirmed in part, reversed in part, and remanded.**