JESSON, Judge
Appellant R. S. (grandmother) seeks to adopt her three grandchildren after their parents' parental rights were terminated by the district court. Generally, when relatives are interested in adopting children under guardianship of the commissioner of human services, they must receive notice of adoption-review hearings, as well as adoption-placement agreements. Minn. Stat. §§ 260C.607, subd. 2, .613, subd. 1(c) (2018).[1] And they have a right to *11 ask the district court to adopt the child pursuant to a motion for adoption placement. Minn. Stat. § 260C.607, subd. 6 (2018). A district court need not provide a relative with notice, however, if the court "ruled out" the relative as a suitable adoptive placement. Minn. Stat. § 260C.607, subd. 2(5). Here, without a formal proceeding, Anoka County Social Services asserted, and the district court later confirmed, that grandmother was ruled out as a suitable adoptive home. Grandmother contends that the district court did not explicitly rule her out as a suitable adoptive placement and incorrectly determined that she failed to make the necessary prima facie showing in her motion for adoption placement. Because the district court did not issue a ruling expressly excluding grandmother as a suitable adoptive parent before grandmother's motion for adoption placement, yet relied upon an after-the-fact determination that grandmother had been excluded, we reverse and remand.
FACTS
M.B., C.B., and F.B. are the children of grandmother's daughter, J.G. (mother), and J.B. (father). Mother, father, and the children were residing with grandmother in 2015 when the children were removed from their parents' care and placed into foster care. The children's removal was initiated by a call to the police, prompting officers to discover the two older children, then toddlers, naked and unsupervised in the neighborhood. Police also found the youngest child, then an infant, inside the home. Father was passed out in the house at the time. Mother was away from home using illegal narcotics.[2] Grandmother acknowledged that both mother and father used drugs while living in her home.
Two years later, the district court terminated mother's and father's parental rights. The district court's decision to terminate the parental rights (TPR) centered on the couple's substance-abuse issues, as well as domestic violence between mother and father. And the district court's decision included a finding that "[grandmother] was previously unable to protect the children from being exposed to domestic abuse and drug abuse."[3]
While the child-protection process unfolded, Anoka County Social Services (county) began to consider alternative placements for the children if reunification of the children with their parents was unsuccessful. Grandmother pursued adoption of the children and the county interviewed her in September 2016 and March 2017. But the county determined that grandmother was not an appropriate placement option. The county's concerns centered on grandmother's inability to set boundaries with mother, which led the county to conclude that grandmother could not "ensure the children's safety." A year later, grandmother called the county, again expressing her interest in adopting the children. She also requested that Wellspring Adoption Agency complete a home-study assessment *12 for the purpose of addressing whether she met the required standards for adoption. But the county reiterated that she "had been ruled out" as a placement option.
In spring 2018, Wellspring completed the home-study assessment and gave grandmother a favorable, but qualified recommendation. The home-study assessment noted grandmother's love for her grandchildren and stated grandmother's strengths were her willingness to uproot her own life and seek outside resources to care for her grandchildren. But Wellspring expressed reservations about grandmother's relationship with mother[4] and identified issues grandmother needed to address, including development of a support system, creation of an action plan that protects the children, and outside assistance for herself.
While the county rejected grandmother as an adoptive placement, it found an alternative family. After caring for the children for almost three years, the foster family decided to adopt the children and completed an adoption placement agreement.[5] The county sent a notice of the adoption placement agreement to the district court on April 5, 2018. But the county did not notify grandmother because it believed that grandmother was previously ruled out by the district court as a possible placement option.[6] Although grandmother did not receive official notice of the adoptive placement agreement, she learned of the proposal and filed a motion for permanent adoptive placement in the district court. After hearing her motion, the district court concluded that grandmother had not made a prima facie showing of unreasonableness on the part of the county in failing to place the children with her and denied her an evidentiary hearing on her adoption motion. The foster parents then adopted the children in July 2018.
Grandmother appeals.
ISSUES
I. Did the district court err in finding that grandmother was not entitled to notice of the pending adoption because she had been ruled out as a potential placement option?
II. Did the district court err in determining that grandmother failed to make a prima facie showing of the county's unreasonableness in failing to place the children in her care?
ANALYSIS
Once a child is adjudicated in need of protection and services (CHIPS) and enters care, a dual process typically begins: work toward reunification of the child with the parent or parents and development of a plan for a different permanent home if reunification is unsuccessful.[7] Development of the second prong-a permanent placement-requires the county to identify relatives who may serve as potential *13 adoptive families.[8] Minn. Stat. § 260C.221(a) (2018). Because the legislature prioritizes relative adoption, Minnesota law further requires that notice be given to certain relatives[9] of the review hearings held to assess progress toward permanency. Minn. Stat. § 260C.607, subd. 2(5). If reunification fails and parental rights are terminated, Minnesota law provides these relatives (and foster parents) the opportunity to contest a county's placement of the child in a different adoptive home and to seek to adopt the child themselves. Id. , subd. 6(a). To do so, a relative must first make a prima facie showing that the county was unreasonable in failing to make an adoptive placement with the relative, before proceeding to an evidentiary hearing on the motion. Id. , subd. 6(b), (c).
With this construct as a backdrop, we turn to two legal issues raised by grandmother, who sought to adopt the three children. Grandmother first asserts that she was entitled to receive notice of the review hearing on the executed adoption agreement with the foster family because the district court did not previously rule her out as a suitable adoptive placement option. This question requires us to address what it means for a relative to be previously "ruled out by the court" as a suitable adoption-placement option for the children, which is a matter of statutory interpretation. Minn. Stat. § 260C.607, subd. 2(5). We then turn to grandmother's second argument: that she established a prima facie showing that the county was unreasonable in denying her adoption request. Grandmother contends that because she made a prima facie case, the district court should have granted an evidentiary hearing on her placement request. We address each issue in turn.
I. The district court erred by concluding that grandmother was ruled out as a placement option.
Grandmother argues that the district court erred in finding that she was not entitled to receive notice of the fully executed adoption agreement because she was previously "ruled out" as a suitable adoptive placement.[10] To evaluate this issue we turn to the statute that sets out who is required to receive notice of adoption review hearings, Minnesota Statutes section 260C.607, subdivision 2(5). The statute states:
[Parties entitled to notice include] relatives of the child who have kept the court informed of their whereabouts ... and who have responded to the agency's notice ... indicating a willingness to provide an adoptive home for the child unless the relative has been previously ruled out by the court as a suitable ... permanency resource for the child.
*14 Minn. Stat. § 260C.607, subd. 2(5) (emphasis added.)
Grandmother contends that for a court to "rule out" a relative there must be an express court order to that effect. But the county argues that the findings of fact in the district court's TPR order explicitly referring to grandmother (particularly the finding that "[grandmother] was previously unable to protect the children from being exposed to domestic abuse and drug abuse") implicitly ruled her out as a suitable placement option. This interpretation was adopted by the district court when it later denied grandmother's motion for adoption placement.
To determine whether grandmother had been "ruled out by the court" as a suitable adoptive placement for the children, we engage in statutory interpretation. This court reviews questions of statutory interpretation de novo. Lee v. Lee , 775 N.W.2d 631, 637 (Minn. 2009). The goal of statutory interpretation is to determine the intent of the legislature. State v. Jones , 848 N.W.2d 528, 535 (Minn. 2014). We begin by looking at the plain language to determine whether the statute is ambiguous on its face. Am. Family Ins. Grp. v. Schroedl , 616 N.W.2d 273, 277 (Minn. 2000). If a statute is susceptible to more than one reasonable interpretation, it is ambiguous. State v. Fleck , 810 N.W.2d 303, 307 (Minn. 2012). If a statute is unambiguous, we apply the statute's plain meaning. Larson v. State , 790 N.W.2d 700, 703 (Minn. 2010).
Here, the language in the statute is plain. To "rule out" a relative as a permanency resource for a child requires the district court to make a ruling to that effect. See Minn. Stat. § 260C.607, subd. 2(5). A factual finding in a TPR proceeding that grandmother failed to protect the children is not a ruling regarding whether grandmother is a suitable adoptive placement.[11] Neither is it relevant nor appropriate that the county inferred that a court "implicitly" ruled out a relative. The plain language of the statute requires a court ruling. And it requires a court ruling before notice of review hearings and adoption placement plans are subsequently provided to relatives. "Previously ruled out by the court" means precisely that.
Our plain-language interpretation of the statute is reinforced by dictionary definitions. "Rule" is defined as "to decide a legal point, to make an official decision about a legal problem." Black's Law Dictionary 1529 (10th ed. 2014) (emphasis added). Further, "rule out" is defined as "to prevent; preclude" and "to remove from consideration; exclude." The American Heritage Dictionary 1577 (3d ed. 1992). These definitions support our conclusion that the district court must issue a ruling explicitly excluding a relative from being considered as a suitable adoptive placement option in order for that relative to be "ruled out."
Even if we agreed that the phrase "ruled out by the court" could reasonably be read to refer to implicit rulings, we would be faced with two reasonable interpretations of the statute, which would require us to turn to the factors presented in Minnesota Statutes section 645.16 (2018). There, the legislature outlines a list of factors to assist us in discerning legislative intent. One is critical here: the occasion *15 and necessity for enacting the law. Minn. Stat. § 645.16(1) (2018). When considering placement options for children in the child protection system, the legislature directed child-placing agencies (consistent with the child's best interests) to consider relatives first. See Minn. Stat. § 260C.212, subd. 2(a)(1)-(2) (2018) (when placing children under the guardianship of the commissioner, the county should consider placement in the following order: "(1) with an individual who is related to the child by blood, marriage, or adoption; or (2) with an individual who is an important friend with whom the child has resided or had significant contact"). Given this "relatives first" consideration, we discern that when the legislature required a relative to be "ruled out by the court," it intended that ruling to be explicit. To permit implicit conclusions based on other proceedings is inconsistent with the public policy favoring relative placement.
In sum, the district court erred when it held that it had previously ruled out grandmother as a suitable adoption-placement option based upon its factual finding in the TPR order and concluded that grandmother was not entitled to receive notice of the review hearing on the fully executed adoption agreement.
II. The district court erred by relying on the erroneous "ruled out" determination when it concluded that grandmother failed to make a prima facie showing of unreasonableness.
Relatives of children under guardianship of the commissioner of human services may file a motion for an order for adoptive placement of a child, provided they have an approved home study. Minn. Stat. § 260C.607, subd. 6(a)(1). But to receive an evidentiary hearing on the motion, the relative must make a prima facie showing that the county was unreasonable in failing to place the child in their care. See Minn. Stat. § 260C.607, subd. 6(b), (c). Here, the district court determined grandmother had not made the required prima facie showing and her motion was dismissed without an evidentiary hearing.
When reviewing a district court's dismissal of a motion for adoptive placement without an evidentiary hearing, we review de novo whether the district court properly treated the parties' supporting documents, which must be accepted as true. In re Welfare of Children of L.L.P. , 836 N.W.2d 563, 570 (Minn. App. 2013). But we review the district court's determination of whether appellants established a prima facie showing for an abuse of discretion. Id. Finally, we review de novo whether the district court properly determined the need for an evidentiary hearing. Id. Grandmother contends the district court erred in two ways: by not accepting her affidavit and supporting documents as true and by denying the existence of a prima facie case.
Here, the district court concluded that the county had reasonably decided not to place the children with grandmother because she had been previously ruled out as an adoptive placement. In its conclusion of law regarding grandmother's prima facie showing, the court stated:
[Grandmother] has not made a prima facie showing that Anoka County Social Services has been unreasonable in failing to make the adoptive placement of the three minor children with her.... The Court previously ruled out [grandmother] as a suitable permanency resource for the children when the Court found "[grandmother] was previously unable to protect the children from being exposed to domestic abuse and drug abuse." TPR Order ¶ 92, August 4, 2017. Anoka County Social Services has *16 not been unreasonable when failing to consider [grandmother] for adoptive placement of the three minor children.
By basing its decision that grandmother failed to establish a prima facie showing on the erroneous legal conclusion that grandmother had been previously ruled out as a placement option, the district court abused its discretion. This conclusion is driven by our earlier analysis that a district court must issue a ruling expressly excluding a relative as a suitable placement option in order to be considered "ruled out by the court" pursuant to Minnesota Statutes section 260C.07, subdivision 2(5). When that did not occur, a district court cannot shortcut examination of the record to assess whether a prima facie showing of unreasonableness is established.[12] Neither is the discretionary question of whether grandmother made a prima facie showing one for this court to address in the first instance. See In re Welfare of M.F. , 473 N.W.2d 367, 370 (Minn. App. 1991) (remanding for district court to exercise discretion when district court erred by addressing discretionary matter based on erroneous legal conclusion).
Accordingly, we reverse and remand for the district court to reconsider whether grandmother made a prima facie showing that the county was unreasonable in failing to place the children with her, thereby entitling her to an evidentiary hearing. In doing so, the district court may consider the previous findings in the TPR order, in the overall context of the parties' supporting documents.
DECISION
In adoption-placement cases, the district court must issue a ruling expressly excluding a relative as a suitable placement option in order for that relative to be considered "ruled out by the court" pursuant to Minnesota Statutes section 260C.07, subdivision 2(5). Because there is no prior ruling by the district court explicitly excluding grandmother as a permanency option, the district court erred in relying on an implicit ruling of ineligibility. For these reasons, we reverse and remand for the district court to determine, in its discretion, whether grandmother established a prima facie showing that the county failed to reasonably consider her request to adopt the children. If the district court concludes she did so, then an evidentiary hearing would be appropriate.
Reversed and remanded.

We acknowledge that the 2018 statutes were not in effect when this case was litigated to the district court. Absent an amendment of a statute affecting rights of a party that had vested before that amendment, however, "appellate courts apply the law as it exists at the time they rule on a case." Interstate Power Co. v. Nobles Cty. Bd. of Comm'rs , 617 N.W.2d 566, 575 (Minn. 2000). Therefore, we cite the current version of the relevant statutes in this opinion.

The background information and full recitation of facts for the termination-of-parental-rights case can be found in In re Welfare of Children of J.L.G. , No. A17-1323, 2018 WL 1145894 (Minn. App. Mar. 5, 2018).

This factual finding was based on the underlying child-in-need-of-protection-or-services (CHIPS) petition. We note that grandmother was neither the subject of nor a party to the underlying CHIPS matter.

Wellspring noted that grandmother had not set any boundaries with mother and that even though grandmother knew mother cannot visit the children, she hoped they could all spend a holiday together in the near future.

An adoption placement agreement is the written agreement between the county, the commissioner and the adopting parent, which reflects the intent of all those signing to the agreement that the adopting parents are adopting children who are under guardianship of the commissioner. Minn. Stat. § 260C.603, subd. 3 (2018).

The county also found that grandmother did not keep the district court informed about her whereabouts, but the district court did not address this issue and it is not before us in this appeal.

This process is known as concurrent permanency planning. Minn. Stat. § 260C.223, subd. 1(b) (2018).

A permanent placement can also include transfer of legal custody to a fit and willing relative or an award of permanent custody to the social service agency in limited circumstances. Minn. Stat. § 260C.515. subds. 4, 5 (2018).

Relatives required to receive notice are those who have kept the court informed of their current address and who have responded to the social services agency's notice regarding the child's out-of-home placement. Minn. Stat. §§ 260C.607, subd. 2(5), .221(a).

Because the district court entertained the merits of grandmother's motion, grandmother was not prejudiced by the lack of notice. However, we consider what "ruled out" means because the issue is intertwined with the district court's determination that grandmother failed to make a prima facie showing of unreasonableness on the part of the county. We also note that, in its brief, the county does not raise the issue of mootness due to the adoption of the children and points to the "paucity of case law" on this subject, stating that "instruction by the court of appeals on these issues will serve to guide [county] agencies in the future."

While not relevant to our analysis, we note that grandmother was not a party to the termination proceeding, and was not a participant in that proceeding. See Minn. R. Juv. Prot. P. 21.01, .02 (addressing parties to juvenile protection proceedings and their rights); Minn. R. Juv. Prot. P. 22.01, .02 (addressing participants to juvenile protection proceedings and their rights). We also note that grandmother was not otherwise represented by counsel in the termination proceeding.

Because we conclude that the district court abused its discretion in this regard, we do not reach the issue of whether the district court properly treated the parties' supporting documents.