*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-0750**

In the Matter of the Welfare of the Child of: S. F.,
Commissioner of Children, Youth, and Families, Legal Custodian.

**Filed October 27, 2025**
**Affirmed**
**Larkin, Judge**

Washington County District Court
File No. 82-JV-23-558

Scotty Ducharme, Rockpine Law, LLC, Minneapolis, Minnesota (or appellant)

Kevin M. Magnuson, Washington County Attorney, Andrew T. Jackola, Assistant County
Attorney, Stillwater, Minnesota (for respondent county)

Angela J. Sonsalla, Perham, Minnesota (for guardian ad litem Connie Kranz)

Connie Kranz, Guardian ad Litem

        Considered and decided by Ede, Presiding Judge; Frisch, Chief Judge; and Larkin,

Judge.

**NONPRECEDENTIAL OPINION**

**LARKIN**, Judge

        Appellant challenges the district court's order denying her motion for adoptive

placement and intervention in the post-termination proceedings regarding her grandson.

We affirm.

**FACTS**

In February 2024, S.F. voluntarily terminated her parental rights to her son, who was born in August 2022, and entered into a contact agreement with the proposed adoptive parent. Respondent Washington County filed a notice of adoptive placement. Appellant, E.F., the child's maternal grandmother, timely moved the district court for adoptive placement and to intervene as a party.

Under Minn. Stat. § 260C.607, subd. 6(a)(1) (2024), a relative moving for adoptive placement who does not have a valid home study is permitted to file an affidavit attesting to their efforts to obtain a home study. However, the affidavit must also be signed by a representative of the responsible social services agency or licensed child-placing agency. Grandmother's motion included an affidavit stating, "I was never offered a home study or licensing to be a foster parent for [the child]. I had to go out and work with a private agency to get licensed because the County did not offer me that service. In denying my services the County acted unreasonably." Grandmother also stated in her affidavit, "I have begun the process of licensing and completing the paperwork. I have talked to Holly at Evolve Servi[c]es about getting my adoption license for [the child]." Grandmother signed her affidavit, but it was not signed by a representative of the county or the licensing agency, Evolve.

On October 16, 2024, the district court held a post-permanency review hearing and heard oral arguments on grandmother's motion. Grandmother's counsel acknowledged that grandmother had not filed a signed affidavit from Evolve, but argued that the court's

2

focus on the statute's signature requirement was "incredibly academic" because grandmother was engaged with Evolve. At this hearing, counsel for the county stated:

> I guess just thinking it through, community services has been in contact with [Evolve], the agency, which is completing, apparently completing the home study, or adoption home study for [grandmother], and . . . I believe they have a -- I just got to figure out what I wrote down. It is mid-January that they have to complete -- they provide themselves 120 days, I believe, to complete the process.

On November 20, 2024, the district court denied grandmother's motion for adoptive placement and motion to intervene. On January 2, 2025, grandmother filed a motion for relief from the district court's November 20, 2024 order. On the same day, grandmother filed a letter to her counsel from Evolve that stated that grandmother was in the process of receiving her home study assessment. And on March 10, 2025, the county filed a report with the district court stating that grandmother

> has been actively working with [Evolve] to obtain a child-specific foster-adopt license since August 2024. Her licensing worker . . . estimate[d] [grandmother's] home study will be completed by mid-late January 2025. [Grandmother] was issued a foster care license on February 28, 2025. This worker has requested [grandmother's] home study from [her licensing worker] on March 3, 2025, but has not yet received a copy.

On March 12, 2025, the district court held a review hearing and heard oral arguments on grandmother's motion for relief. At this hearing, grandmother's counsel argued, among other things, that "[t]here was agreement between the parties that . . . licensing was going forward." Counsel for the county clarified that

> there were a number of factual misstatements in [grandmother's] memorandum. We never capitulated, we never agreed . . . that there would be a hearing. We simply

3

came to court . . . pursuant to [grandmother's] motion for an adoptive placement to ask the Court, as is required by law, to exercise its independent judgment as to whether [grandmother's] affidavit, which is the sole place the Court can get its allegations, supported [a] prima facie case.

Counsel for the county further stated, "I want to make it very clear there was never any request to [counsel or the county] by [grandmother] to sign any affidavit." When questioned by the district court, grandmother's counsel, in effect, acknowledged that he never presented grandmother's affidavit to the county for a signature.

The district court denied grandmother's motion for relief. Grandmother appeals.

## DECISION

Before addressing grandmother's challenges to the district court's adoptive-placement determinations, we first address a threshold matter. The child's guardian ad litem (GAL) argues that the district court erred in determining that grandmother had standing to bring her January 2, 2025 motion for relief. The thrust of the GAL's argument is that, as a participant but not a party to these proceedings, grandmother was not authorized to bring that motion under the Minnesota Rules of Juvenile Protection Procedure.

Under Minn. R. Juv. Prot. P. 33.02, a participant in a juvenile-protection proceeding generally is not authorized to file motions. There are exceptions to this rule. For example, a child's relative is authorized to move the district court for adoptive placement. Minn. Stat. § 260C.607, subd. 6(a) (2024). And, any person may file a motion to intervene. Minn. R. Juv. Prot. P. 34.02. Grandmother moved the district court for relief under rule 22.02. That rule provides that "the court may relieve *a party or the party's legal representatives* from a final order or proceeding." Minn. R. Juv. Prot. P. 22.02 (emphasis added). The

4

GAL argues that although grandmother had a right to appeal the district court's November 20, 2024 order to this court, because grandmother was not a party, she did not "have a right" to bring her January 2, 2025 motion under rule 22.02, which sought relief from the district court's order denying grandmother's placement and intervention motions.

The GAL appears to raise legitimate concerns regarding whether grandmother was authorized to file her January 2, 2025 motion for relief and thus toll her time to appeal the November 20, 2024 order. However, we need not resolve the GAL's argument on this issue because, as explained below, grandmother's claims fail on the merits. We therefore assume, without deciding that grandmother's January 2, 2025 motion for relief under rule 22.02 was properly before the district court.

**I.**

Grandmother contends that the district court erred when it determined that she failed to make a prima facie showing that the agency had been unreasonable in failing to make the requested adoptive placement.

Grandmother moved for adoptive placement under Minn. Stat. § 260C.607, subd. 6(a)(1), which authorizes a relative to request court-ordered adoptive placement if the relative has been a Minnesota resident for six months and has a qualifying adoption home study approving the relative for adoption or a qualifying affidavit. "If the relative or foster parent does not have an adoption home study, an affidavit attesting to efforts to complete an adoption home study may be filed with the motion instead." Minn. Stat. § 260C.607, subd. 6(a)(1). "The affidavit must be signed by the relative or foster parent *and the responsible social services agency or licensed child-placing agency completing the*

5

*adoption home study.*" *Id.* (emphasis added). We have recently held that a relative moving for adoptive placement under Minn. Stat. § 260C.607, subd. 6(a)(1), must file a valid home study or a qualifying affidavit at the time the motion is filed to be entitled to an evidentiary hearing. *In re Welfare of Child. of V.R.R.*, 2 N.W.3d 587, 595 (Minn. App. 2024), *petition for rev. dismissed* (Minn. Mar. 22, 2024).

"The motion and supporting documents must make a prima facie showing that the agency has been unreasonable in failing to make the requested adoptive placement." Minn. Stat. § 260C.607, subd. 6(b) (2024). If the motion and supporting documents fail to make the necessary prima facie showing, "the court shall dismiss the motion," but "[i]f the court determines a prima facie basis is made, the court shall set the matter for an evidentiary hearing." *Id.*, subd. 6(c) (2024). Thus, the prima facie determination is dispositive of whether the district court must hold an evidentiary hearing on a motion for adoptive placement. *Szarzynski v. Szarzynski*, 732 N.W.2d 285, 292 (Minn. App. 2007); *see In re Welfare of Child. of L.L.P.*, 836 N.W.2d 563, 570 (Minn. App. 2013) (citing *Szarzynski* in a child placement dispute).

"At the prima-facie-case stage of the proceeding, [the movant] need not establish anything. [The movant] need only make allegations which, if true, would allow the district court to grant the relief [she] seeks." *Amarreh v. Amarreh*, 918 N.W.2d 228, 231 (Minn. App. 2018) (emphasis omitted), *rev. denied* (Minn. Oct. 24, 2018).

> In considering whether the motion for adoptive placement makes a prima facie showing and the movant is entitled to an evidentiary hearing, the district court must accept the facts as true as set forth in the movant's supporting documents, disregard contrary allegations by the agency, and consider the

6

agency's allegations only to the extent that they explain or provide context to the movant's allegations.

*L.L.P.*, 836 N.W.2d at 565.

We review the district court's denial of a motion for adoptive placement prior to an evidentiary hearing under the custody-modification standard. *Id.* at 570. Under that standard,

we first review de novo whether the district court properly treated the parties' supporting documents. The district court must accept facts in appellants' supporting documents as true, disregard contrary allegations, and consider the non-moving party's supporting documents only to the extent that they explain or provide context. *Second, we review the district court's determination of whether appellants established a prima facie case for abuse of discretion.* Third, we review de novo whether the district court properly determined the need for an evidentiary hearing.

*Id.* (emphasis added) (citations omitted).

Grandmother makes several arguments in support of her claim that the district court erred in determining that she failed to make a prima facie showing. But our decision to affirm is compelled by grandmother's failure to comply with the statutory-affidavit requirement.

The district court reasoned—and it is undisputed that—grandmother failed to provide an affidavit signed by the county or Evolve attesting to her efforts to complete a home study. Because grandmother failed to meet the statutory-affidavit requirement, the district court concluded that she did not make the necessary prima facie showing and that, therefore, she was not entitled to an evidentiary hearing on her motion for adoptive placement. The district court's conclusion is consistent with the plain language of the

7

statute and this court's interpretation of that statute in *V.R.R.* *See* Minn. Stat. § 260C.607, subd. 6(a)(1) (stating that a qualifying affidavit "must be signed by the relative or foster parent and the responsible social services agency or licensed child-placing agency completing the adoption home study"); *V.R.R.*, 2 N.W.3d at 595 (holding that a qualifying affidavit under Minn. Stat. § 260C.607, subd. 6(a)(1), filed with a motion for adoptive placement, is a statutory prerequisite for an evidentiary hearing).

None of grandmother's arguments overcome her statutory obligation to meet the affidavit requirement. At oral argument to this court, grandmother generally challenged the soundness of the affidavit requirement, as well as the need for strict compliance with that requirement. But grandmother confirmed that she is not challenging the constitutional validity of the affidavit requirement. Instead, she argued that the requirement is "absurd." That argument raises an issue of statutory interpretation. Although grandmother did not raise the issue of statutory interpretation in district court or address it in her briefing to this court, we briefly address it in the interest of thorough review. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating that appellate courts generally address only those issues presented to and considered by the district court); *State, Dep't of Labor & Indus. v. Wintz Parcel Drivers, Inc.*, 558 N.W.2d 480, 480 (Minn. 1997) (indicating that appellate courts decline to reach issues that are inadequately briefed); *see also* Minn. R. Civ. App. P. 103.04 (allowing an appellate court to address an issue in the interests of justice).

As to the statutory interpretation issue inherent in grandmother's arguments,

> The goal of statutory interpretation is to ascertain and effectuate the intent of the Legislature. To do so, we must first determine whether the statute is ambiguous on its face. If a

8

> statute is subject to only one reasonable interpretation, it is not ambiguous, and we apply its plain meaning.

*State v. Torrez*, 21 N.W.3d 467, 470 (Minn. 2025) (quotations and citations omitted).

If a statute is ambiguous, a court turns to the canons of construction to determine the meaning of the statute. *State v. Thonesavanh*, 904 N.W.2d 432, 436 (Minn. 2017). We are also guided by certain statutorily enumerated presumptions. Minn. Stat. § 645.17 (2024). One such presumption provides that, in ascertaining legislative intent, we may be guided by the presumption that "the legislature does not intend a result that is absurd, impossible of execution, or unreasonable." *Id.* (1).

Grandmother does not argue that the language of the statutory-affidavit requirement is ambiguous, and we do not discern any ambiguity. One could argue—as a matter of policy—that the statutory-affidavit requirement is unreasonable. However, in the absence of ambiguous statutory language justifying consideration of legislative intent and application of legislative presumptions, there is no occasion for us to consider that possibility. We are not a policy-making court. *See Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988) ("The function of the court of appeals is limited to identifying errors and then correcting them."); *LaChapelle v. Mitten*, 607 N.W.2d 151, 159 (Minn. App. 2000) ("Because this court is limited in its function to correcting errors it cannot create public policy."), *rev. denied* (Minn. May 16, 2000).

On this record, the district court did not abuse its discretion in determining—under the plain language of Minn. Stat. § 260C.607, subd. 6(a)(1)—that because grandmother did not meet the statutory-affidavit requirement, she did not make a prima facie showing that

the county had been unreasonable in failing to place the child with her for adoption and that she therefore was not entitled to an evidentiary hearing on that issue.

## II.

Grandmother also contends that the district court erred by denying her motion to intervene under Minn. R. Juv. Prot. P. 34.

"Any person may be permitted to intervene as a party if the [district] court finds that such intervention is in the best interests of the child." Minn. R. Juv. Prot. P. 34.02. "[P]ermissive intervention should be granted liberally when doing so will advance the best interests of the child." *In re Welfare of Child. of M.L.S.*, 964 N.W.2d 441, 452 (Minn. App. 2021). Generally, however, "additional delays in the adoption of a child under the guardianship of the commissioner are not in the child's best interests." *In re Welfare of Child. of A.M.F.*, 934 N.W.2d 119, 124 (Minn. App. 2019); *see* Minn. R. Juv. Prot. P. 1.02 (b), (e) (noting that the purpose of the juvenile-protection rules is to provide just, thorough, speedy, and efficient resolution to juvenile-protection matters and to avoid delays in court proceedings). "Under our law, children are not to be kept waiting, uncertain who will raise them or where they will grow up." *In re Welfare of Child of R.D.L.*, 853 N.W.2d 127, 135 (Minn. 2014).

"We review permissive-intervention rulings for abuse of discretion." *M.L.S.*, 964 N.W.2d at 451. "A district court abuses its discretion by making findings of fact that are unsupported by the evidence, misapplying the law, or delivering a decision that is against logic and the facts on record." *Woolsey v. Woolsey*, 975 N.W.2d 502, 506 (Minn. 2022)

(quotation omitted). "An appellate court will reverse the denial of a request to permissively intervene only when a clear abuse of discretion is shown." *M.L.S.*, 964 N.W.2d at 451.

Grandmother argues that the district court abused its discretion because the court failed to make sufficient findings "related to intervention" and did not allow her attorney to fully argue the issue of visitation. Grandmother asserts that the district court "engaged in no examination of the best interest factors regarding intervention" and that the district court's findings "fail[ed] to consider the mandatory analysis of the best interest of the child as it relates to his Brazilian culture, relationship with relatives, sibling contact, and each of the other factors outlined in Minnesota Statute 260C.212 subd. 2(b)."

As to grandmother's motion to intervene, the district court concluded that:

> Because the motion for adoptive placement cannot proceed, the Court is not aware of any purpose that would be served by [grandmother's] intervention. Even if she were a party, she would not have any ability to file another motion regarding adoptive placement. As finalizing the adoption is the only work left to be done in this case, allowing [grandmother] to intervene offers nothing to further that goal. As a result, the Court cannot conclude that intervention is in the best interests of [the child].

Although grandmother may be correct that the district court did not analyze the factors outlined in Minn. Stat. § 260C.212, subd. 2(b) (2024), the district court was not required to do so. *See M.L.S.*, 964 N.W.2d at 453 ("[R]ule 34.02 does not require the district court to address the factors listed in Minn. Stat. § 260C.212, subd. 2(b)."). Moreover, the district court's ruling suggests that permitting grandmother to intervene would serve only to delay the child's adoption. That consideration was undeniably relevant

11

to the specific issue of whether it was in the child's best interests for grandmother to be a party to the case. As we have explained:

> While we are mindful that the legislature has directed child-placing agencies to consider relatives as placement options before non-relatives, the preference is not to be applied so as to override the overall best interests of the child. Generally, additional delays in the adoption of a child under the guardianship of the commissioner are not in the child's best interests.

*A.M.F.*, 934 N.W.2d at 124 (quotation and citations omitted).

At oral argument to this court, grandmother emphasized the impact that the underlying termination has on her ability to have contact with the child and asserted that unless she is allowed to intervene, "she will never see this child again." Grandmother notes that although Minn. Stat. § 257C.08, subd. 3 (2024), allows a grandparent to petition the district court for reasonable visitation in some circumstances, Minn. Stat. § 257C.08, subd. 5 (2024), contains an exception for adopted children that provides: "This section shall not apply if the child has been adopted by a person other than a stepparent or grandparent" and that "[a]ny visitation rights granted pursuant to this section prior to the adoption of the child shall be automatically terminated upon such adoption." Thus, grandmother argues that "[t]he adoption of this child by a non-relative will mean that [her] visitation will be 'automatically terminated.'"

To the extent that grandmother sought intervention as a party to pursue court-ordered visitation with the child by preventing the child's adoption by the proposed adoptive parent, such a strategy would further delay the child's adoption. Again, in 2024, the child's mother voluntarily terminated her parental rights to the child and entered into a

contact agreement with the proposed adoptive parent. Under these circumstances, the district court did not clearly abuse its discretion by denying grandmother's motion to intervene as a party in the remaining proceeding to finalize the child's adoption. *M.L.S.*, 964 N.W.2d at 451 ("An appellate court will reverse the denial of a request to permissively intervene only when a clear abuse of discretion is shown.").

**Affirmed.**